Ross *v.* Montana Union Ry. Co.

*(Circuit Court, D. Montana. November 25, 1890.)*

1. PATENTS FOR INVENTIONS—INFRINGEMENT—NOVELTY.
    In an action for infringement of patent, the *prima facie* presumption that plaintiff was the first inventor, and that the invention was a novelty, raised by introduction of the patent, must be rebutted beyond a reasonable doubt.

2. SAME—COMBINATION.
    A combination of old elements producing a new and beneficial result is a patentable invention; but not if substantially the same combination has been used before, though used for a different purpose.

3. SAME—EVIDENCE OF PATENTABILITY.
    The fact that an application has been submitted to the scrutiny of the patent-office, and a patent issued, is strong evidence of the patentability of the invention.

4. SAME—WANT OF INVENTION.
    Want of invention of a combination cannot be predicated on the ground that the means are so simple that skilled mechanics believe that they could have produced the same result if required.

5. SAME—COMBINATION.
    The use of less than all the elements in a combination of elements is not an infringement of the patent, provided an equivalent for the omitted elements, well known as a substitute at the time the patent issued, is not substituted.

6. SAME—ABANDONMENT.
    Abandonment of a patent must be to the public; it cannot be in favor of one person.

7. SAME—LICENSE.
    Where the patentee of an article knows that his employer is manufacturing it with the intention of using it, and allows him to do so without objection, a license may be implied.

8. SAME—INFRINGEMENT—MEASURE OF DAMAGES.
    The measure of damages in an action for infringement of a patent on a dumping-car is the reasonable amount of royalty that ought to have been paid on each car, based on the utility and cheapness of the car as compared to others used for the same purpose.

At Law.    Action to recover royalty for use of patented invention.

*Wm. Scallon*, for plaintiff.

*J. S. Shropshire*, for defendant.

KNOWLES, J., (*charging jury.*)   1. The issues in this case are presented in the pleadings, which will be furnished you, to take to your rooms in considering the matter presented for your consideration. The plaintiff claims to be the inventor of an improved dump-car. The defendants claim,—*First,* that he was not the inventor of this dump-car; *second,* that, if he was the inventor, it has no novelty in it,—that it is not new in the sense that that word is understood in patent laws; and, *third,* that if he was the inventor, they have a license to use these cars if they are used,—a sort of an implied license,—or, at least, a portion of them, because they received them with the knowledge and consent of the plaintiff before he applied for his patent. Now, I have a few words that I wish to say to you on this point that I have reduced to writing, and I will ask you to pay attention to this, because, under the practice in the United States courts, the charge, as it is termed, to the jury, does not go to the jury; that is, they do not take the charge to their jury-room. The defendant claims in its answer that the plaintiff, Ross, was not the original and first inventor of the dumping-car, the model of which has been shown you by the evidence in this case. It is for you to determine from the evidence whether or not he is the original and first inventor of this car. He has introduced his patent, derived from the United States, for this car. This patent affords, *prima facie,* a presumption that the plaintiff, Ross, was the original and first inventor of this car. The defendant may overthrow this presumption, but in order to do this it must establish that he is not such first and original inventor by evidence so strong and convincing that you can say that he is not the first and original inventor of this car, to a moral certainty. A moral certainty is that high degree of probability, though less than absolute assurance, that induces prudent and conscientious men to act unhesitatingly in matters of the gravest importance. This instruction as to moral certainty is equivalent to the instruction that is generally given in criminal cases, that a jury must be satisfied beyond a reasonable doubt of the guilt of a defendant, and, if there is a reasonable doubt in the mind of the jury, it must then be resolved in favor of the defendant; and in this case the reasonable doubt that may be in the minds of the jurors as to who is the first inventor should be given to the one who has the patent for the invention. If you are not satisfied to a moral certainty of it, that is beyond a reasonable doubt, that the plaintiff is not the inventor, then you should find that he is the first and original inventor. It is claimed that Mr. George Dickinson was the first inventor of this car, but I say to you that the law is that whoever first perfects a machine is entitled to a patent therefor, and is the real inventor, although others may have previously had the idea, and made some experiments towards putting it in practice. In order to constitute an invention, the party claiming the same must have proceeded so far as to have reduced his idea to practice, and embodied it in some form. So, if Dickinson did not reduce his idea of a dump-car to practice, and did not embody his idea in a machine, he cannot be said to be the inventor of this car. It may be, however, that, although Dickinson is not entitled to be classed as the inventor of this car, plaintiff is not entitled to be so classed. If

Dickinson made the plan of this car, and furnished Ross such information in regard to the same that it would have enabled an ordinary mechanic, without the exercise of any ingenuity and special skill on his part, to construct and put in successful operation the car in evidence, then Ross was not the original and first inventor of this car.    This is a matter for the jury to consider from the evidence; but you must remember that you are to be satisfied from the evidence of this fact to a moral certainty.    If Dickinson made some kind of a plan of this car, and suggested parts of the same, and the construction of the trial car was made under the joint supervision of both him and Ross, it might be that they were the joint inventors of this car; but this issue is not presented for your consideration in this case.

2. The issuing of the letters patent for this car also creates the presumption of its novelty.    The defendant denies the novelty of this car. It then has the burden of proving to you to a moral certainty that there is no novelty in this car.

3. The defendant has introduced many other letters patent in evidence for dump-cars.    The plaintiff, as I understand from the pleadings and evidence, claims the whole combination as his improvement in dump-cars, not any particular part of this car.    An inventor may obtain a patent for one appliance attached to an instrument, or the whole instrument or machine.    In this case it is the whole machine—the combination—that the plaintiff claims.

4. If the plaintiff claims as his invention the car in evidence as an entirety, and the same consists of a combination of old elements incapable of division or separate use, the defendant cannot make good its defense that the car was invented and patented before by proving that a part of the entire invention is found in a prior machine or car, and another part is found in another, and so on indefinitely, and from the whole or any given number expect the jury to determine that this car had been patented or in use before.    Now, you will understand this, gentlemen, that if, in these patents that are introduced, you find one principle that is in this car, and another principle in another patent, and so on, —that does not interfere with the plaintiff's right to his invention. His invention is a combination of these elements into one machine. Most machines are a combination of elements that were known before. It is not often that a new element is brought into use in a machine; it is generally a combination of old elements; but if these old elements, brought together in a combination, produce a new and useful and beneficial result, that is an invention, if it is one that requires more than ordinary mechanical skill to construct.    If the car of plaintiff, as presented to you by the evidence, had been substantially patented before,—that is, the combination claimed,—then plaintiff's patent is void. If any of these patents introduced to you in evidence show that this car in its entirety had been substantially patented before and used before, then the plaintiff's patent is void.    The showing that parts of plaintiff's car had been used in one patent, and another part in another, is not sufficient.    If all of the material parts of plaintiff's car were em-

bodied substantially in another car for which letters patent have issued, then he is not entitled to the same.

5. What is a novelty in a machine is often one of considerable difficulty, and especially is it difficult to determine when, as in this case, no new principle is invoked, but the machine consists of a combination of all principles. It is not enough that the thing claimed to be invented is new in the sense that in the shape or form in which it is produced it shall not have been known before, and that it shall be useful, but it must amount to an invention or discovery.

6. The exercise of invention requires something more than ordinary mechanical skill. The adaptation of a mechanical instrument to a new use is not a new invention. If there had been cars used before that were substantially the same as this car, that were devoted to some other purpose than hauling ores, and then were applied by the plaintiff to the hauling and dumping of ores, that would not be a new invention. It might have been that they were used for hauling coal, or anything that might be dumped at the side. So, if this car is only a new-shaped car, the construction of which required only ordinary mechanical skill, and is only an old machine adapted to a new use, there is no novelty in it.

7. In considering this question of novelty, at the request of the plaintiff I instruct you as follows: You are instructed, on the question of invention, that, if the evidence shows that plaintiff's application was submitted to scrutiny by the patent-office, that would be an important consideration in plaintiff's favor; and the more rigid the scrutiny, the stronger would be the effect of it, as affecting the decision of the question of there being invention in plaintiff's device.

8. The reason of this is that in the patent-office there are men who are required by law to make examinations, and to give patents only for new and novel inventions; and they are supposed under the law to perform their duty, and it is taken as something of a guide to a jury in determining a question of novelty.

9. In considering the question of invention, you are instructed that, when a particular result was long desired and sometimes sought, but never attained until the production of a particular device, and this new device proves to be useful, and supplies the want, this tends very strongly to prove the exercise of an inventive and creative faculty; and that want of invention cannot be predicated on the ground that the means are so simple that mechanics believe that they or skilled mechanics could have produced the same result if required, for solved problems may often appear easy to persons who could never have solved them or produced the result or device.

10. Now, you will understand this instruction; that very often a machine is invented, and mechanics see it, and it looks as though it might be very easy to construct it. A great many machines are very simple, and yet they exhibit a good deal of inventive ingenuity.

11. Upon the several questions, whether or not the plaintiff's alleged invention was anticipated by the alleged prior patents, or was the result of an invention, or mere mechanical skill, or was novel, you are in-

structed that evidence of superior utility of the plaintiff's device or car, and of its commercial success, would tend very strongly to establish that it was not anticipated by any of the patents in question, and was the result of an inventive act, and was novel; and, in case of doubt, such evidence would resolve it in plaintiff's favor. Therefore, if in this case you would otherwise be in doubt on any of these questions, and if you should find from the evidence that plaintiff's car was recognized and accepted as one of superior utility over cars known or used prior to his, and was a commercial success, then you should find on that point in favor of the plaintiff.

12. I have been unable to examine the letters patent introduced by defendant in evidence. They have been read to you, and you have examined them to a limited extent. It is for you to say whether they show there was no novelty in this car of plaintiff's. If they do show it, then plaintiff cannot recover in this case.

13. The defendant makes the point that it is not infringing the patent of plaintiff. This is a question for you to determine from the evidence. At the request of the defendant, I give you the following instructions upon this point:

14. You are instructed that the plaintiff's claim in this action is for an improvement in dump-cars, and if he recovers against the defendant it must be for an infringement by the use of the precise car described and claimed in the plaintiff's specifications forming a part of his letters patent. The plaintiff's claims are as follows:

"(1) In a dump-car, the combination of the frame, the bottom formed of inclined sides and ends, having a central longitudinal ridge, the swinging doors hinged to the frame above, and closing against the lower edges of the sides of the bottom, the latch-bars at the lower edges of the doors extending beyond the ends of the same, and having notches formed in their projecting ends, the latches pivoted to the frame, and mechanism for operating the latches at both ends of the doors simultaneously, substantially as set forth. (2) The combination in a dump-car of the frame, the inclined bottom, the swinging doors, having latch-bars at their lower edges provided with notched extensions, the pivoted latches, the longitudinal shaft or shafts journaled above the doors, and having outwardly extending arms, and the links connecting said arms with the latches, as herein set forth. (3) In a dump-car, the combination of the frame, the bottom having inclined sides, the doors hinged to the frame, and closing against the lower edges of the sides, the latch-bars at the lower edges of the doors having notched extensions, the latches engaging the latter, the hinge-straps extending beyond the lower edge of the doors, and having slots formed in their projecting ends, the slotted arms secured to the car frame, and engaging said slotted extensions of the hinge-straps, and the keys adapted to be fitted in said slotted arms, substantially as set forth."

In these three claims, respectively, the plaintiff sets forth a combination which the defendant denies that it has used, or is using, as claimed. The defendant has sought to prove that the dump-car used by it does not comprehend the precise elements claimed by the plaintiff in his combination; that is, the proof on the part of the defendant is to the effect that the car used by it does not contain the "longitudinal shaft" above

the doors, with the "outwardly extending arms," and the "links connecting the said arms with the latches," nor the center hinge-strap, with its slotted extension, and that it contains an element not found in plaintiff's combination, to-wit, "the door prop" for holding the door open; that it has adopted other devices for operating doors than those described in plaintiff's specifications and claims. If you shall find that in any one or more of these respects the defendant has not since the date of plaintiff's patent used, and is not now using, the elements or ingredients of plaintiff's combination, as claimed in his letters patent, then there is no infringement, and the plaintiff cannot recover.

15. I would add upon this point this addition to that instruction: If defendant has been and is substantially using the dump-car of plaintiff, then they are infringing upon plaintiff's patent-rights, if you should find that he has any. If the car defendant is using is substantially different from the combination of plaintiff, then defendants are not infringing upon plaintiff's patent. Defendants claim that they are using a car, and have been since the issuing of the patent to plaintiff, which is different from the plaintiff's car. It is certain that the car which was constructed for defendant, and which it first used, was the identical dump-car of plaintiff; but defendant claims that since the issuing of the patent they have ceased to use, and have removed from these cars, what is termed the "rock shaft" or longitudinal bar, and links attached thereto, and the central hinge-strap to the doors of the car are not fastened at the center.

16. Now, it is true, as a matter of law, that where a person patents a combination of several elements, the using of less than all of them is not an infringement; but this rule is subject to this qualification: If the party charged with infringing a patent omits entirely one of the ingredients of the patented combination, without substituting any other, he has not infringed the patent. If the defendant, leaving off this rock-bar and these links for raising the latch, has not substituted any other thing for it in raising these latches, then it is not infringing upon plaintiff's patent; but if it substitutes an equivalent for the one withdrawn, which performs the same function as the other, and which was well known at the date of plaintiff's patent as a proper substitute for the one omitted, then he has infringed the patent. If he substituted something else in the place of it which was an old and well-known machine or contrivance, then he has not varied the patent, and has infringed upon it.

17. In this case the defendant seems to have omitted or quit using or has removed the rock-bars used by plaintiff in his car. Whether or not the function performed by the use of hammers in the hands of men was well known at the issuing of a patent to plaintiff as a proper substitute for the rock-bar with links attached to the latches, I leave it for you to say. The rock-bar, it was expected, would be turned by means of a wrench or crank in human hands, and by means of the links attached thereto, and to the latches which were attached as fasteners to the doors, lift the latches and open the doors. The hammer is a mechanical in-

strument in human hands, which may be used for knocking up the latches on these doors. Whether or not, as I have said, they are equivalents, is for you to decide.

18. The defendant has asked me to instruct you upon the point as to whether or not the plaintiff abandoned his invention. I refuse to do this, because I do not think there has been presented evidence enough to warrant you in finding that there was any intention on his part to abandon his invention. At no time was it proposed to abandon the same to the public. The Union Pacific proposed to have the invention patented in the name of Dickinson. An abandonment cannot be in favor of one person, but to the public, giving every one the right to use and manufacture the invention. .

19. The plaintiff has asked me to instruct you that the defendant has admitted in the pleadings that the plaintiff was the first and original inventor of this car. This I refuse to do, because I have thought there was enough presented in the pleadings to present the issue to you as to who was the first and original inventor of this car, or as to whether or not it was the plaintiff, and evidence has been introduced on this point.

20. The defendant asks me to instruct you upon the question of an implied license given by the plaintiff to the defendant to use this car, and upon this point I instruct you as follows:

21. You are instructed that, if you shall find that the defendant has used, or is now using, plaintiff's dump-car, you must take into consideration the question whether or not such use by the defendant was pursuant to any license, express or implied, from the plaintiff; and in determining this question you are charged that, if you shall find that the car patented by the plaintiff was made by him while he was in the employ of the defendant, and receiving regular pay, using its tools, material, and time, and that he made no objection to the use of the same; or if you shall find that the said car was made by the plaintiff in conjunction with the defendant's superintendent, for the purpose of securing for the defendant a more suitable car for its ore business, and that the plaintiff knew or had reason to know that such was the purpose, and made no objection to having the car tested; or if you shall find that the order for the purchase of these cars had been given in pursuance of this purpose of the company, and that the plaintiff knew, or had reason to know, that the order had been given, and made no objection at the time; or, if you shall find that all of these cars were so ordered in pursuance of the said purpose of the defendant, and the same were received by it and put into use prior to the plaintiff's leaving the service of the defendant, and he made no objection to the defendant,—then, and in view of any of these facts being found by you, the defendant would have an implied license to use said car to the number it had put in use prior to plaintiff's application for his patent for said car, and for such use it would not be liable to the plaintiff.

22. If you should find that the plaintiff had knowledge of these cars being put in use by the defendant, and made no objection, you would be authorized to find from the evidence that he consented to their use.

That is a matter for you to determine, whether or not he did consent. Whatever he may have said, he stood by and knew that these cars were being manufactured, and saw them brought up there and put into use, and he was in the employ of the defendant at the time, and made no objection to it. I think you would be warranted in finding that he had knowledge of and consented to the use of these cars up the time that he made his application for a patent.

23. All cars the defendant may have used before plaintiff made his application for a patent, if made and used with plaintiff's knowledge and consent, defendant has a right to use until they are worn out, and he has a right to use the same without paying plaintiff anything for such use. That is the statute of the United States. If defendant had made and used these cars with the knowledge and consent of the plaintiff, then it has a right to use these cars until they are worn out; that is, the number they had received before the plaintiff made his application for a patent.

24. Knowledge and consent may not be proved always in the exact words. It may be shown from circumstances, and these circumstances are a matter for you to consider in this case. The cars that the defendant received since the application for a patent, if you should find that this was the plaintiff's invention, that it had novelty, and was a utility, would entitle plaintiff to some compensation for their use as damages.

25. The last point for you to consider is the question of damages. If you find that the plaintiff was the first inventor of this car, that the invention was a new and useful combination, then you are to consider whether or not he has been damaged by any use of his cars by the defendant. Upon this point I give you an instruction, as prepared by the plaintiff:

26. You are instructed upon the question of the measure of the damages that in this case the proper method of assessing plaintiff's damages, if you find that he is entitled to recover any, is for you to ascertain and determine what would have been a reasonable royalty for the defendant to have paid for the use of the cars in question at so much per car; and, in determining this point, the utility and cheapness of operation or use of the cars in question, as compared with other things known or used at or prior to the time of the alleged infringement,—that is, from January 28, 1890, to April 15, 1890,—and the saving, if any, to the defendant by the use of these cars, if such saving, cheapness, or utility be proved by the evidence, will be your leading guides. The date of the application of this patent is in some of these pleadings, but I have forgotten what it is. I believe it is February 8, 1889. Now, I have instructed you that all cars that were manufactured or used by the defendant with the knowledge and consent of the plaintiff prior to that time, (February 8, 1889,) the defendant has a right to use.

*A juror.* How many were those?

27. *The Court.* Well, I don't know; that is the question for you to determine. I think the plaintiff claims there were 105; the defendant, I think, about 97. Of course it is not admitted at all by the defendant

that they have infringed these 97 cars, it is not admitted that there was any novelty about them, and it is plain in relation to these 97 cars, too, that they are not using the identical combination.    The question is whether they are using a well-known equivalent, and so on.

28. *Mr. Scallon, counsel for plaintiff.* If your honor please, I think we are required by the United States practice to take any exceptions before the jury leaves the box.    I might say, if your honor please, although I don't see my friend taking any exceptions to it, that we admit in our complaint that 145 cars were received prior to the application for patent.    They claim 189.    The evidence of Watson tended to show 152. So, if your honor please, we would ask for a special instruction on that point.    I claim that Watson's statement, not being upon his personal knowledge, but simply upon memorandum from the books of the company, is not sufficient.

29. *The Court.* That was not competent testimony.    The testimony was admitted without exception being taken.    If there was any, it certainly was overlooked, and I would not instruct the jury in any way as to the testimony whatever.    That is not the province of the court.

30. *Mr. Scallon.* Then I want it understood that the difference is between 152 and 145.    The jury might understand it differently.

31. *The Court.* Well, the jury is called upon to consider this evidence, and decide the facts.    I am struggling with the law of the case.

32. *Mr. Scallon.* At the outset of your charge, your honor referred to what was the rule in criminal cases.    Then your honor in coming back to this case referred to the "defendant" where your honor obviously intended to say "plaintiff."

33. *The Court.* Well, the jury probably understood the meaning intended to be conveyed.    Of course, in a criminal case you have to find the guilt of the defendant to a moral certainty.    In this case you have got to find that the plaintiff is not the inventor to a moral certainty, and that the invention was not novel to a moral certainty.

Jury found a verdict for plaintiff, and assessed his damages at $7,500.