J. D. RANDALL CO. v. FOGLESONG MACH. CO.

(Circuit Court of Appeals, Sixth Circuit. February 14, 1913.)

No. 2,410.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR STUFFING HORSE COLLARS.

The Collett and Rennie patent, No. 949,293, for a machine for stuffing horse collars with tangled straw, was not anticipated, discloses patentable invention, and possesses great utility; also, *held* infringed.

2. PATENTS (§ 238*)—INFRINGEMENT—UTILIZATION OF MATERIAL FOR ACCOMPLISHMENT OF RESULT.

In an action for infringement of a patented machine for stuffing horse collars with tangled straw, a contention by defendant that in its machine it had no means for rotating its hopper, and that to accomplish that result it utilized the straw—the material on which the machine operated—and that the material cannot be considered a part of the mechanical means of the combination which constituted the machine, *held* unsound.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 376; Dec. Dig. § 238.*]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by the Foglesong Machine Company against the J. D. Randall Company. Decree for complainant, and defendant appeals. Affirmed.

See, also, 200 Fed. 741.

Murray & McCallister, of Cincinnati, Ohio (W. F. Murray, of Cincinnati, Ohio, of counsel), for appellant.

Border Bowman, of Springfield, Ohio (Paul A. Staley, of Springfield, Ohio, of counsel), for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. [1] The appellee (hereinafter called the plaintiff) is the owner of patent No. 949,293, issued to Collett and Rennie February 15, 1910, for a machine for stuffing horse collars with tangled straw. The trial court having decreed that the machine made by the appellant (hereinafter called the defendant) infringed the first, second, third, and fifth claims of such patent, the case is brought here to secure a reversal. It will be sufficient to quote the first claim:

"In a stuffing machine, the combination of a rotatable hopper, a feed pipe, a reciprocating feed rod extending below said hopper and into said feed pipe, means for rotating said hopper, and means for reciprocating the feed rod during the rotation of the hopper."

In the stuffing of horse collars by means of devices antedating that of Collett and Rennie, straw of short lengths only, costing from $18 to $24 per ton, can be used. The preparation of the straw by cutting it into lengths involves loss of time and much expense. The hoppers in which the straw is placed are in some such devices circular, as shown in the Estes patent, No. 916,543, issued March 30, 1909, the Allen patent, No. 767,196, issued August 9, 1904, and the original Randall machine. In others they are rectangular, as shown in the

Foglesong patent, No. 275,624, issued April 10, 1883. In all of the foregoing prior mechanisms the hopper is stationary, and not rotatable, and is obstructed by means located within it to bring the straw in contact with the toothed reciprocating stuffing rod at its bottom, which delivers the straw in a doubled condition through a tube to and packs it in the collar. Estes, in his invention, for instance, to feed the straw downwardly against the rod, employs a series of bars or fingers so arranged in planes one above another at an appropriate angle as to constitute a spiral formation whereby the straw at the upper portion of the hopper moves downwardly from within the plane of one finger into that of the next, until it reaches the rod. Allen avails himself of horizontally disposed arms on whose lower sides are a series of teeth. These arms move the straw to the passage leading to the feeding chamber, to which chamber it is then carried by feed saws, where it is caught by the stuffing rod. Foglesong's patent calls for a pair of reciprocating toothed bars, which, pushing back by their forward movement a swinging flap on the front side of the hopper, permits the straw, which has been brought into contact with them, to fall to the bottom of the hopper, where it is caught by the hooks on the feed rod, and is then drawn into the stuffing tube for delivery to and packing in the collar.

The principal object sought by Collett and Rennie in stuffing horse collars was to substitute for prepared straw tangled or machine-threshed straw, costing only about one-third as much, and involving no expense in cutting it into required lengths. They employed, as did their predecessors in the art, a feed tube, reciprocating feed rod and hopper, but, to accomplish their purpose, they made marked changes in the hopper and its manner of operation. On the outer end of a heavy frame they affix a circular stationary base, so located with reference to the right side of the frame as to permit a power-driven toothed reciprocating rod, which is also on the right side of the frame, to cross such base at the center of its bottom in a recess or groove. On the front of the base is attached the tube through which the straw is fed into the collar. The hopper, preferably circular in form, is mounted on the base, and, instead of being stationary, is rotated by means of gear teeth or cogs on a ring which extends around the lower periphery of the hopper and rides upon the base member, the teeth meshing with those of a power-driven pinion at the rear of the hopper and to the left of and above the reciprocating rod. The interior of the hopper is freed from all central obstructions in the form of devices for working the straw down to the reciprocating rod—a condition essential to the use of tangled straw as it comes from the bale. After the tangled straw is put in the hopper, it is so compactly pressed down by a heavy metallic disc or iron plate, counterbalanced by a weight regulated by pulleys, that the friction between the straw and the hopper causes them to rotate together. The importance of the disc to the successful operation of their device is such that the friction of the straw against the hopper, in the absence of such disc or induced by one that is too light, would be so slight that the straw would remain stationary as the hopper revolves. Three small pins projecting from the inner surface of the hopper near its bottom prevent the disc from coming in contact with the reciprocating rod and

assist in rotating the straw with and at the same rate of speed as the hopper. The straw, being carried around by the rotating hopper, is presented to the reciprocating rod in an ever changing position, and in consequence is picked in its original lengths by the toothed rod from the bottom of the mass at the bottom of the hopper, and is driven through the feed tube into the collar. The reciprocating rod, when in its most rearward position, is slightly past the center of the hopper. Consequently the entire lower surface of the straw comes in contact with the rod during the revolution of the hopper. The actual operation of the machine gradually forces the straw to the outer circumference of the hopper, and, as it accumulates at the bottom, it assumes a form much like that of a bird's nest, and, notwithstanding its being placed in the hopper in a more or less tangled condition, is caught by the feed rod at approximately right angles, and, being folded by it, is thus packed in the collar. Collett and Rennie's device is a patentable invention, and is distinguishable from and is an advance over anything known to the prior art, in that (1) it has a hopper which is rotatable, free from central obstructions and with mechanical connections at its circumference for its rotation, which are driven from the same shaft as that which drives the rotating rod, the hopper rotating continuously and simultaneously with the reciprocation of such rod; and (2) it permits, as the result of its manner of construction, the use of tangled or machine-threshed straw. Its advantages and the demand for it were such that, following its introduction, it was sold to manufacturers of horse collars at prices as much as six times that received for other machines made for the same purpose.

The machine which the defendant placed on the market in competition with plaintiff's differs from the latter in the following respects: The defendant, instead of employing a toothed ring affixed to or made a part of the lower end of the hopper, severs the hopper above the ring, and thus makes the ring a separate part. It rests the ring on a shoulder in the base close to and beneath, but not in contact with, what it terms the hopper, and, unlike the plaintiff's, incloses its ring by an upward turn of the base and hides it from view, except at the point at which its cogs mesh at its circumference with those of the pinion. It projects inwardly from the inner surface of the ring three pins about three times as long as those in plaintiff's hopper, their distance from the reciprocating rod being apparently the same as that of plaintiff's pins from its feed rod. The defendant, in its effort to distinguish its device from that of plaintiff, characterizes its (the defendant's) toothed ring as a pinion independent of the hopper, which, when its machine is engaged in stuffing collars, through the instrumentality of the pins projecting from its interior surface causes the straw to rotate and with it the hopper.

What the defendant has done and all that it has done, as regards the operative parts of its mechanism, is to divide the hopper into sections and lengthen the inwardly protruding pins near its bottom. Its toothed ring is as much a part of the hopper as is the toothed ring which surrounds the lower periphery of the plaintiff's hopper. The diameter of the two circumferences is the same and their inner

surfaces are in alignment. Neither the plaintiff by its patent nor the defendant by any requirement is limited to a hopper of any particular height. The lower or ring section of the defendant's machine is and is intended to be a straw-containing receptacle. Were this not so, the pins would have been affixed to the upper section. If the latter section be removed or its use wholly abandoned, the defendant's machine, excepting as to the height of the hopper, is then the same as plaintiff's, and performs the same work in the same way and with the same result. It will be less efficient, because the hopper will have to be more frequently replenished with straw, but this disadvantage may be measurably, if not entirely, overcome by increasing the height of the ring or the weight of the disc, that a greater quantity of straw may be held in position.

The defendant's intention is, as stated by its expert, and it is essential to the successful operation of the defendant's machine as a merchantable device, that the entire hopper shall rotate. For this reason the toothed revolving ring is made its base section to receive power, as the plaintiff's does, to produce such rotation. The plaintiff is not restricted to the precise means stated in the patent for the rotation of its hopper or applying power to produce that result. But this fact is not of controlling consequence, for in both machines the power is applied to the circumference of the hopper by the same means, through their respective toothed rings, to rotate the entire hopper continuously and simultaneously with the reciprocation of the feed rod. The plaintiff's ring being adherent to and made a part of the hopper, its entire hopper rotates with a speed which bears a definite relation to the speed of the reciprocating rod. The defendant's ring being separate from the upper section of the hopper, the power applied directly to it and therefore to its pins as a part of it operates indirectly through the compact disc-laden straw to rotate the whole of the hopper, but the upper section revolves less rapidly than the lower and with diminished speed as the supply of straw becomes exhausted. As regards the rotation of the upper portion of the hopper, the defendant, by the use of the same means as the plaintiff employs, accomplishes imperfectly by indirection what the plaintiff accomplishes perfectly by direction. The defendant's entire hopper will not rotate in the absence of the disc for want of sufficient friction between the straw and the hopper's inner surface, nor will the straw rotate, as shown by Lause's experiment, unless the hopper rotates at the same time. It is true, as urged, that the upper section of the hopper will not rotate if there be no straw in the hopper, but this proves the important part played by the disc in its rotation. Moreover, the hopper was made for use in stuffing collars, and not to operate idly. The defendant having retained and utilized the mechanical power-driven pinion which meshes with the toothed ring or base of the hopper, and the pins which project into and tend to rotate the compact mass of straw and serve to stay the downward course of the superimposed weight and to present the straw at substantially a right angle to the feed rod, and also the heavy disc whose purpose is to produce friction between the straw and hopper so great as to cause them to rotate to-

gether, has so pirated the plaintiff's device as to constitute manifest infringement, as found by the learned trial court.

[2] The defendant also asserts that it has no means for rotating its hopper; that it utilizes the straw—the material on which the machine operates—for that purpose; that the material cannot be considered a part of the mechanical means of the combination which constitutes the machine; and that, therefore, the rule announced by this court in Union Paper Bag Mach. Co. v. Advance Bag Co., 194 Fed. 126, 114 C. C. A. 204, applies and relieves it from infringement. This contention is unsound. It appears from that case that Dulin made as an element of each of his combination claims a lower central gripper, one of whose purposes is to draw the blank downward until the diamond-fold is gripped between certain rolls. The patentee of the defendant's machine dispensed with the gripper, and did not substitute in its stead any mechanical equivalent. Instead of employing such a gripper to effect the downward movement of his blanks, he did not sever them as did Dulin, but by preserving them in a series by central tab connections or tangs at their ends, until later in the process of manufacture, caused the blanks to move downward, and so had no use for a central lower gripper. In the instant case the defendant does not omit from its machine any element of any of the plaintiff's combination claims in question whose function is performed by the material upon which the machine operates. The defendant has not only retained and used all of the elements found in such claims of the plaintiff's patent, but has added none other.

The interference proceeding discussed in the briefs does not affect the plaintiff's patent, and need not therefore be considered.

Infringement clearly appears, and the lower court therefore is affirmed, with costs.