### J. D. RANDALL CO. v. FOGELSONG MACH. CO.

(Circuit Court of Appeals, Sixth Circuit.   June 30, 1914.)

No. 2629.

1. PATENTS (§ 312*)—INFRINGEMENT—ACCOUNTING FOR DAMAGES.
   Findings of a master as to the damages sustained by a complainant by reason of defendant's infringement *held* not sustained by the evidence.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.*]

2. PATENTS (§ 312*)—INFRINGEMENT—ACCOUNTING FOR DAMAGES—EVIDENCE.
   On an accounting for damages for infringement, testimony of complainant's salesman as to conversations with possible purchasers *held* admissible, as tending to show why sales were not made; but, after its admission, refusal to permit defendant, on timely notice, to take the testimony of the persons or concerns to whom sales were not made, was error.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.*
   Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Suit in equity by the Fogelsong Machine Company against the J. D. Randall Company. From an order affirming the report of the master on an accounting, defendant appeals. Reversed.

See, also, 216 Fed. 599.

Walter Murray, of Cincinnati, Ohio, for appellant.
Border Bowman, of Springfield, Ohio, for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge. After the validity of the plaintiff's (appellee's) patent had been sustained by this court (203 Fed. 41, 121 C. C. A. 377), a special master was appointed to state an account of profits and damages. The trial court affirmed his finding that the plaintiff, through the defendant's (appellant's) competition, lost four sales of its machine to the Bingham Harness Company, the Voss-Barbee Manufacturing Company, the Southern Oak Leather Company, and the Minnesota Harness Company, and that defendant should consequently pay to plaintiff $100 as profits and $3,480 as damages, and entered judgment accordingly. The defendant thereupon appealed. The only assignment of error that need be noticed relates to the insufficiency of the evidence to sustain an award of damages.

[1] The evidence indicates that, out of about 100 manufacturers of horse collars in the United States, the largest number of purchasers for a tangled straw stuffing machine has not been at any time more than about 50, and may have been much less. Until the defendant's device was put upon the market, the plaintiff may be said to have been without competition as to machines of the precise kind to which his belongs, but other machines were still in use. In some instances plaintiff's machine supplanted those of both the defendant and Bronson, but they did not monopolize the market or become a necessity in the manufacture of horse collars. Evidence of this is found in the fact that the largest horse collar manufacturer in the United States, as the result of a competitive test between the machines of the plaintiff and Bronson, selected a Bronson machine, and in the further fact that, notwithstanding the diligent efforts of each of the litigants to effect sales in 1910, the defendant sold but nine of its machines to as many persons, three of which were returned, and plaintiff in the same year sold but sixteen to thirteen different persons, one of them being a resident of Canada. The selling price of the defendant's machines averaged about $300; that of plaintiff's, excepting one optioned in 1912 for $450, ranged from $1,200 to $1,800, but from different causes, such as discounts and other allowances from the purchase price, the actual sum realized by the plaintiff was considerably below the figures above named. In 1911 it sold one machine and in 1912 four more.

The plaintiff, in 1909, placed a machine on trial with the Bingham Harness Company. It was returned in the latter part of that year before the defendant's machine was offered for sale. After the defendant had made its sale to the Southern Oak Leather Company, the plaintiff sold its device to that company and as a part of the transaction took over the machine theretofore sold by the defendant. Subsequently the company complained of the operation of the plaintiff's machine and refused to keep it, and plaintiff received nothing on account of it. It is manifest that the defendant was wrongfully charged with damages on account of its sales to those companies.

[2] Nor is the evidence sufficient to sustain a finding against the defendant on account of its sale to the Voss-Barbee Manufacturing Com-

pany. Aside from certain unsupported conclusions of the witness, Lause, the only evidence touching such sale is found in his statement that "they (the Voss-Barbee Manufacturing Company) said they would not pay us a price of $1,800 when they could buy Randall's for $300." This falls short of establishing that plaintiff's machine was a necessity to the company, or that it was able to pay $1,800 for a machine, or would have bought from plaintiff but for defendant's competition.

Lause testified regarding the Minnesota Harness Company that "When I called on them at Winona, this company stated that they wanted a long tangled straw machine, but could buy a Randall for $275 or $300, and if Randall would stand back of any litigation that might come, they would purchase his instead of paying us $1,800;" that they "stated they were in the market for tangled straw machines;" and that they "would not want to pay us $1,800, when Randall was offering the same machine for about $300." He further testified that plaintiff could have made $1,000 on the machine the defendant sold to such company, basing such statement, he says, upon a letter bearing date of April 22, 1910. There is no letter in evidence which bears that date or warrants such a statement. Aside from certain conclusions of the witness and certain letters sent by the company which show that it had under consideration the machines of both litigants, nothing further appears in the record touching its purchase. The evidence regarding such transaction is not so conclusive as that relating to lost sales to the Tenison Bros. Saddlery Company and the Indianapolis Saddlery Company, in reference to which the master found the proof insufficient to award damages to plaintiff. The defendant objected to the admission of the statements of the Minnesota Harness Company and other manufacturers to Lause, on the ground that the evidence so offered was the recital of conversations had by the witness with third parties in the absence of any representative of the plaintiff. Without finally passing on the point thus raised, but allowing the testimony to stand for the time being, the master stated that the Minnesota Harness Company people should be called to testify concerning the matters mentioned by the witness, whose testimony he considered hearsay The substance of the several conversations was given in a most general form. In only one instance was the date of the conversation fixed, and but twice were the persons named with whom conversations were had; but the objection did not go to such matters. The evidence was admissible, its purpose being to show the mental attitude of the manufacturers in question and why they did not purchase the plaintiff's machine. Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 295, 12 Sup. Ct. 909, 36 L. Ed. 706; Steketee v. Kimm, 48 Mich. 322, 324, 12 N. W. 177; Railway Co. v. Herrick, 49 Ohio St. 25, 29 N. E. 1052; Elliott on Evidence, c. 24; Worth v. Chicago, M. & St. P. Ry. Co. (C. C.) 51 Fed. 171. Its truth or falsity, as well as its probative weight, was for the master.

After the plaintiff had closed its prima facie case the master sent a letter to its counsel—a copy being delivered to the defendant also—in which he notified plaintiff that regarding the sales actually lost he found but little evidence other than hearsay, but that there was some

evidence strongly tending to show that the sales made to the Southern Oak Leather Company, the Voss-Barbee Manufacturing Company, the Minnesota Harness Company, and the Bingham Harness Manufacturing Company were sales that were lost to plaintiff, although in those cases, for want of positive testimony, much was left to inference. As to certain other sales, among which were those to the Tenison Bros. Saddlery Company and the Indianapolis Saddlery Company, he informed the plaintiff that the evidence was in large part or clearly hearsay, that he knew of no rule that would justify him in finding that the plaintiff lost those sales, and that the defendant should have an opportunity of cross-examining the parties and testing their actual state of mind on the question of purchasing machines. He suggested that plaintiff take the depositions of the parties to whom it alleged the defendant had sold machines and thereby give the defendant the opportunity of cross-examination, and thus produce competent evidence. The plaintiff declined to comply with such suggestion, and thereupon the defendant decided to offer no evidence. The master, having prepared his report, requested the parties to appear on a given date to enter their objections, if any. The defendant, having learned of the master's conclusions, appeared and asked leave to take the depositions of the Minnesota Harness Company and the Voss-Barbee Manufacturing Company, which request was denied. The report was filed three days later. In view of the announcement made by the master in the progress of the hearing and in his subsequent letter to counsel regarding the character of plaintiff's evidence, the defendant was, we think, justified in concluding that answering testimony was unnecessary and that, as the evidence against the Tenison Bros. Saddlery Company and the Indianapolis Saddlery Company was held insufficient to sustain an award, much more so was that offered regarding the loss of a sale on the part of plaintiff to the Minnesota Harness Company. The master's findings were sufficiently variant from his previously expressed views to operate as a surprise, and, in fairness to the defendant, its motion for leave to take evidence should have been sustained.

For the reasons above stated, the judgment is reversed, and the case remanded for further action by the trial court and the master.