## UNITED STATES FRUMENTUM CO. v. LAUHOFF et al.

*(Circuit Court of Appeals, Sixth Circuit. June 30, 1914.)*

Nos. 2405, 2406.

1. PATENTS (§ 321*)—INFRINGEMENT—ACCOUNTING—ESTOPPEL.
    Where, after an interlocutory decree finding that defendant infringed both the product and process of complainant's patent, defendant continued to manufacture pending an accounting, using the same machine, but such machine was capable of being so used as not to infringe, defendant was not estopped to deny infringement during the accounting period.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 588, 589; Dec. Dig. § 321.*]

2. PATENTS (§ 328*)—INFRINGEMENT—PRODUCT FROM CORN.
    A finding of infringement of the Lauhoff patent, No. 440,866, for a corn product and the process of making the same, concurred in by a master and the trial court, affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. PATENTS (§ 283*)—CONSTRUCTION—SUIT FOR INFRINGEMENT AGAINST PATENTEE.

While a patentee-assignor may, when made a defendant, litigate the scope of his patent, the courts will not unnecessarily construe it so narrowly as to make it worthless, but will be inclined, so far as the record permits, to make its exclusive right a real and valuable thing.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 448–450, 452; Dec. Dig. § 283.*]

4. PATENTS (§ 312*)—ACCOUNTING FOR INFRINGEMENT—DAMAGES.

On an accounting for damages for infringement, proof alone that complainant had factory facilities for making the additional quantity of the patented product sold by defendant is not sufficient to raise the presumption of fact that it would have made such sales, where the product was sold in competition with numerous others which served the same purpose.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.*

Accounting by infringer for profits, see notes to Brickill v. Mayor, etc., of City of New York, 50 C. C. A. 8; Clark v. Johnson, 120 C. C. A. 389.]

5. PATENTS (§ 312*)—INFRINGEMENT—DAMAGES—EVIDENCE ON ACCOUNTING.

In a case where willful infringement is shown with sales of the patented product by defendant, so extensive as to leave no doubt that complainant sustained substantial damages, he will not be denied relief because of his inability to prove an established royalty or to make definite proof of sales lost; but general evidence to prove his damages or a reasonable royalty may be considered as in other cases of tort, and from that a finding may be made as to what would be fair compensation for his injury.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.*]

6. PATENTS (§ 319*)—"GENERAL DAMAGES."

"General damages" are damages not resting on any of the applicable, exact methods of computation, but upon facts and circumstances which permit the jury or the court to estimate in a general, but in a sufficiently accurate way, the injury to plaintiff.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. § 319.*

For other definitions, see Words and Phrases, vol. 4, pp. 3059, 3060; vol. 8, p. 7669.]

Appeals from the District Court of the United States for the Eastern District of Michigan; Henry H. Swan, Judge.

Suit in equity by the United States Frumentum Company against Frank Lauhoff, William Lauhoff, and Henry Lauhoff. From the final decree, both parties appeal. Reversed on complainant's appeal, and affirmed on defendants'.

The Frumentum Company brought against the Lauhoff Bros. the usual infringement bill, based upon patent No. 440,866, of November 18, 1890. This patent was issued to Frank Lauhoff, who was instrumental in organizing the plaintiff corporation and assigned the patent to it, but later ceased his connection with the Frumentum Company and, it is said, caused the defendant partnership, of which he was a member, to engage in infringing. The patent contained three claims, of which the first two are, for the purposes of this case, equivalent. Claims 2 and 3 are as follows:

"2. As a new article of manufacture the herein described product from corn, consisting of compressed films formed from the corn retained continuously in its normally dry and raw condition, substantially as described.

"3. The herein described process of producing films from corn, consisting in first crushing the cereal in its normally dry condition to granules and subsequently subjecting said granules, in their normally dry condition, to a drawing compression, substantially as described."

It is conceded that the patented product and (except for the drawing step) the patented process differed from the earlier ones of Gent (who called his product "cerealine") only in that the "grits" or granules produced by crushing the hulled and germ-freed kernels were, by Gent, steam-soaked and cooked before they were rolled into films, while Lauhoff retained these grits in their "normally dry" condition. Doubts as to the patentability of this change or step omission at once suggest themselves, but it has been conceded from the beginning of the case that Frank Lauhoff as patentee, and the other defendants by virtue of his relations to their joint enterprise, are estopped to deny the patent's validity; so that infringement and damages have been and are the only questions in dispute. To make its prima facie case, plaintiff produced an expert witness who testified that certain flakes, confessedly produced by defendants, were the product called for by the second claim and had necessarily been made by the process of the third claim of the patent; more specifically, that these flakes could not have been produced if the grits had been effectively steamed before rolling. Defendants met this proof only by an expert who said that the flakes might have been steamed before rolling and still have all their existing characteristics. The District Judge accepted plaintiff's theory, thought the proof of infringement was sufficient, and made the usual interlocutory decree for injunction and accounting.

The defendants continued to manufacture, pending accounting. The master's report was not made until 2½ years after the interlocutory decree, and both parties took evidence before the master upon the question of infringement during his period. The master found that the infringement had continued; that the defendants had made no profits; that plaintiff's profits, if it had made the sales which defendants made, would have been $13,000; and that plaintiff was damaged in this amount. The defendant took exceptions, and on final decree the District Court affirmed the master's finding that the infringement had continued throughout the accounting period, and to the total amount stated; but concluded that plaintiff's proof was insufficient to support the conclusion that, except for the infringement, it would have made the sales. A final decree was therefore entered in favor of plaintiff, but for nominal damages only. The parties bring these cross-appeals.

R. A. Parker, of Detroit, Mich., for the United States Frumentum Company.

James Whittemore, of Detroit, Mich., for Lauhoff and others.

Before WARRINGTON and DENISON, Circuit Judges, and DAY, District Judge.[1]

DENISON, Circuit Judge (after stating the facts as above). [1] The first substantial question is whether defendants, upon the accounting, were at liberty to deny infringement during the accounting period. The argument is that since they were necessarily, while before the master, bound by the interlocutory decree to the effect that what they had been doing was infringement, and that since they claimed to be doing the same thing after the decree as before, the issue was necessarily foreclosed, also, as to the second period. Of course, a master may not re-examine questions adjudicated by the decree and order of reference, but that rule does not reach the peculiar circumstances of this case. The defendants' apparatus, as described by them, contained

---

[1] Judge Day participated in the hearing and decision of the case, but not (owing to his resignation) in the preparation of the opinion.

a chamber in which the grits might be steamed in their progress to the rolls, and contained steam pipes and valves permitting this chamber to be so used. Whether infringement was thereby avoided depended on whether the defendants opened the valves and put steam into this chamber and how much steam was admitted and at what temperature and how long the grits were exposed thereto. It might be quite true that the defendants infringed up to the date of the interlocutory decree, and thereafter, although using the same apparatus, did not infringe. Under these conditions, the issue of fact regarding infringement pending accounting was open to defendants, and it was right for both parties, as they did, to produce testimony directed to that issue. Only in connection with a finding that the manipulation of the apparatus by the defendants was the same after the interlocutory decree as before could the decree operate to foreclose the question of later infringement.

[2, 3] We are not satisfied on this record to disturb the finding of infringement contained in the interlocutory decree or the finding of later infringement made by the master and affirmed by the final decree. Not only is it the settled rule that such concurrent findings, where the issue is one of fact, will not be set aside unless plainly wrong; but we think the lower tribunals drew the proper inference from the entire record. While a patentee-assignor may, when made a defendant, litigate the scope of his patent and have it judically construed according to its true extent (Noonan v. Chester Co. [C. C. A. 6] 99 Fed. 91, 39 C. C. A. 426; Smith v. Ridgley [C. C. A. 6] 103 Fed. 875, 43 C. C. A. 365), the courts surely will not, unnecessarily, construe it so narrowly as to make it worthless. See Alvin Co. v. Scharling, by Judge Gray (C. C.) 100 Fed. 87. They will be inclined, so far as the record permits, to make its exclusive right a real and valuable thing. Ordinary equitable considerations must require this point of view, and the resulting liberality of construction. The substantial validity which this patent imports may well rest on the distinction between, on the one hand, sufficient soaking or cooking to swell or burst the starch cells and tend to create a pasty mass, and, on the other, the absence of any moistening which would prevent the grits from coming to the rolls in raw, normal condition. There can be no absolute standard of "normal" moisture in a grain. The record seems to show an approximate standard for corn thoroughly matured and dried; but this varies considerably in the published tables, and must vary with weather and other conditions. Granting validity to the patent, it can hardly be that it would be infringed by manufacturing last year's corn normally containing 11 or 12 per cent. of moisture and would not be infringed by manufacturing, by the same process, this year's imperfectly matured corn containing 16 to 18 per cent. of moisture; yet this extra 4 to 7 per cent. of moisture is about what defendants claim to have added in their process. When we consider the indefinite limitation of the claim, the small amount of moisture which defendants say they added in the tests which they describe, the facts that there is no definite testimony as to how much steam they used in their process, that whether they used any was a matter of choice, that an experienced and disinterested manufacturer was sure the patented

process must have been used in the product, and the further fact that defendants continually and repeatedly refused to permit any examination of their process or apparatus, we are better satisfied with the result reached below on this point than we could be with the contrary result.

[4] It is clear that, as the case was presented to the master, his ultimate finding of damages must rest on the premise, proved or presumed, that the plaintiff would have made the sales in question if the defendants had not made them. Obviously, where plaintiff seeks damages on the theory of lost sales, this premise is an essential step. There was here no direct proof. It was shown (and we assume sufficiently) that plaintiff had factory facilities for manufacturing the additional amount and so could have filled the orders; but the proof stopped there. There was no testimony that defendants' customers had formerly bought from plaintiff, nor that they were in negotiation with plaintiff or in a territory in which plaintiff was selling, nor of others of those circumstances sometimes held sufficient and sometimes held insufficient to raise the presumption that plaintiff would have made the sales. This presumption is not one of law. Dobson v. Dornan, 118 U. S. 10, 17, 6 Sup. Ct. 946, 30 L. Ed. 63; McSherry v. Dowagiac (C. C. A. 6) 160 Fed. 948, 89 C. C. A. 26. If it exists, it must be raised by the proofs as one of fact. No doubt this presumption may sometimes follow from the mere fact that some one buys or uses the infringing article, as in the cases of which Gould v. Cowing, 105 U. S. 253, 26 L. Ed. 987, is typical; but in that case, and in those cases generally, the infringing article was a special piece of apparatus, and it did not appear that anything else accomplishing the same purpose or generally similar was on the market. In the present case, the record is clear that plaintiff supplied only a small part of the market demand for the general product consisting of raw or partially cooked corn flakes and used chiefly by maltsters; that several other apparently similar, but noninfringing, products under various trade-names had a large sale; that these products were so similar that the ordinary user would not notice the difference, and, indeed, so similar that plaintiff, when its factory was broken down, had supplied its customers with one of the other products without objection. In this condition of the record, a presumption of fact that defendants' customers would have bought plaintiff's product if they had not bought defendants' does violence to the rules of natural inference; there can be no such presumption. In this particular, the case is ruled by the decision of this court in McSherry v. Dowagiac, supra, 160 Fed. at page 951 et seq., 89 C. C. A. 26, and on rehearing, 163 Fed. 34, 35, 89 C. C. A. 512. For another instance where proof was insufficient to show lost sales, see, also, our opinion in Randall v. Fogelsong, 216 Fed. 601, 132 C. C. A. 605, filed to-day.

[5] It follows that, upon the basis of the master's findings, the District Court was right in directing nominal damages only; and it would ordinarily follow in this condition of the case that the judgment below would be affirmed. We are not satisfied to have this case take that course. There is a finding that the patent was valid; that the defendant Lauhoff, who had sold the patent, infringed it extensively.

and so endeavored to keep what he had sold; and that defendants' sales were so large that no one can doubt the actual existence of substantial damages. Under such circumstances, to have plaintiff recover nothing, because the difficulty of absolutely definite proof is insuperable, is a result so unfortunate that, if avoidable, it should not be permitted. We have concluded that, in the situation disclosed by this record, there is another theory of recovery which may be available, and which, because what we now think to be an applicable rule of law was misapprehended by all parties and by both tribunals, has not been considered. Under the practice sanctioned by the Supreme Court in the Westinghouse Case, 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, and adopted by us in Dunn Mfg. Co. v. Standard Co., 204 Fed. 617, 123 C. C. A. 111, we think it a proper exercise of discretion to permit a further accounting in which this theory may be presented. We do not intend to order an accounting de novo, or to permit defendants to contest further the question of infringement or plaintiff to piece out its defective proofs regarding profits and lost sales. On those subjects, the parties have had their day in court, and those questions must be considered closed; but upon the theory of recovery to which we now address ourselves, no one was heard, before either the master or the District Court.

Infringement upon the patentee's rights is a tort; it is a taking of the patentee's property. The measure of damages for that wrong is sometimes clear and sometimes its borders are obscure. We may with benefit compare the rules of damages as applied to property generally; for patents have no peculiarities making general rules of law wholly inapplicable. When we are asked to determine how much compensation an owner of any property should have because it has been wrongfully taken, our first thought is of the market value. The market value of the property or the impairment of that value is the ordinary, normal measure of damages. Obviously, where the act done is the wrongful manufacture and sale of a patented article, the thing taken is the right to manufacture and sell. This is the right which would be given by a license from the patentee, and, since the recovery and collection of full damages (past and future) for a sale operates to give a license to the vendee (Stutz v. Armstrong [C. C.] 25 Fed. 147, 148), the value of that license is the thing to be determined. Obviously, too, the fixed, established license fee or royalty is the only evidence of the market value of the right to make and sell. If there is no such established royalty, the thing taken has no market value, and this criterion of damages must fail. From Seymour v. McCormick, 16 How. 480, at page 490, 14 L. Ed. 1024, it appears that the use of a license fee as the measure of damages in a patent case is only adopting the ordinary rule of market value universally applied as to other property; and, though this thought is not often repeated, it remains the logical basis for this first, "primary" criterion of damages.

With reference to the owner's exclusive right under some patents, just as with reference to innumerable other items or whole classes of property, it often happens that there is no market value. In such case, the law always looks for some other appropriate measure. This is perhaps most commonly found, with reference to general property, in

the owner's entire loss of a sale, or lessened profits on a sale he does make; and the profits which the owner would have made except for the unlawful interference are the familiar measure. This has come to be independently considered as a criterion of damages, sometimes an alternative for and sometimes displacing the "primary" criterion. So, in patent cases, where a loss of sales or diminution of selling price or increase of selling expense by plaintiff can be fairly traced to defendant's infringement, so that the cause and effect relation is established, the profits which plaintiff has thus lost become an accepted measure of damages. Here, also, there is perfect accord between the rules as to property generally and the rules as to patent property.

Returning, now, to the observation of all other kinds of property and rights excepting patent rights, there remains a class of cases or a group of instances where no market value existed and where no loss or impairment of sales can be definitely proved. The law is not, in such case, impotent. Plaintiff is not compelled to go away with nominal damages just because he cannot show that his property, or other like it, was commonly bought and sold on the market, or because he did not wish to sell, or because it was returning him no income. The real value—the actual value—of what has been taken is always the ultimate question. Proof of market value is one way to show this actual loss; proof of lost sales is another way. But, if neither of these methods can be followed, the law permits other available, pertinent proofs. Those familiar with real estate estimate and testify to the real value or fair value of land which is without market value (Chicago, etc., Ry. v. Ohio Co. [C. C. A. 6] 214 Fed. 751, 131 C. C. A. 57); and these witnesses and the jury may take into account all the special circumstances of the situation as bearing on the ultimate question. The same thing is true as to personal property of such character that it has no market value. Instances of the application of this rule as to both real and personal property are too familiar for citation. In the same general class are all personal injury cases. Pain and suffering, the loss of earning power, the loss of support, are all things which have no market value and all present situations where the damages cannot be ascertained or computed according to any arithmetical formula; but the jury is put in possession of all the facts and circumstances, it has the benefit of such testimony from experts as may show the rules and methods in force in the particular field, and it estimates, as best it may, how much money will compensate plaintiff for the wrong done.

Further pertinent familiar illustration is found in the settled rules concerning the estimation of values of property taken in the exercise of the right of eminent domain. It frequently happens that property is taken which is so situated and environed as not to possess any market value; and yet its value is universally solved by opinion evidence. Constitutional inhibitions against taking private property without compensation are no more restrictive upon the government or the agency exercising the power than are other organic provisions which were aimed against mere wrongdoers who appropriate rights of property like those involved under patent grants. It is a travesty to allow property rights to be seized and enjoyed without remedy simply be-

cause of the supposed difficulty in establishing their value. There must be, in the nature of things, in all except the most extraordinary cases, if not in all, available testimony which can be employed with sufficient approximation to the true value—at least to justify its admission against any admitted or proved trespasser. Denial of such a proposition must rest upon the idea that it is better for wrongs to go without redress than that they shall be redressed with imperfect accuracy.

[6] We can see no reason why the owner of a patent may not be compensated upon the same principles, or why the perfect analogy between the rules of damages as to general property and as to patent property which apply with reference to market value and with reference to lost sales should be discarded when we come to what may, for convenience, be called general damages. The jury, in a patent case, can be shown what plaintiff's patent property was, to what extent defendant has taken it, its usefulness and commercial value as shown by its advantages over other things and by the extent of its use and as shown by the profits and savings which could be made upon its sale or adoption. The jury can learn how much of the realizable profit should be credited to the manufacturing process and business risk and how much to the patent, also, what share of the profits or of the selling price it may be customary in that or similar business to allow for the use of such an invention. Experts may be amply qualified to give useful opinions as to the value of the property which is to be appraised. More or less of these things may appear in a given case, all having a bearing on the real value of that for which plaintiff is to be compensated, and the case presents no greater difficulty in computing and ascertaining damages than is met by a hundred juries every day. This damage or compensation is not, in precise terminology, a royalty at all, but it is frequently spoken of as a "reasonable royalty"; and this phrase is a convenient means of naming this particular kind of damage. It may also be well called "general damage"; that is to say, damage not resting on any of the applicable, exact methods of computation but upon facts and circumstances which permit the jury or the court to estimate in a general, but in a sufficiently accurate, way the injury to plaintiff caused by each infringing sale.

Save for the effect of the decided cases, we should have no hesitation in affirming the right of the patentee to recover such "general damage" or "reasonable royalty" in a case where the clearer criteria did not exist, where the utility and advantages of the invention were established and where there was substantial basis for estimating the value of these advantages.[2] To send the successful plaintiff away aft-

[2] We have twice met the question, but passed it without discussion. McSherry v. Dowagiac, 163 Fed. 34, 36, 89 C. C. A. 512; Dunn v. Standard, 204 Fed. 617, 624, 123 C. C. A. 111. The very unfortunate situation existing as to the practical ability of a patentee to recover damages or profits for an infringement committed before the law permits him to have an injunction has been universally recognized. It is familiar knowledge, as stated by Macomber (Fixed Law of Patents, § 826), that experienced patent counsel have advised that, as a general rule, no recovery that would pay the expense of litigation could be anticipated.

er years of litigation and with only nominal damages is repellent to the sense of justice. Such a result has been many times condemned; it is characterized by Judge Severens as "an untoward ending of a good cause" (Brennan v. Dowagiac, 162 Fed. 472, 473, 478, 89 C. C. A. 392, 398), and led him to say, speaking of the patentee's difficulty in preserving his rights:

"But this only enhances the obligation of the courts to find a way, if it be possible, to redress the wrongs done by those who have been willing to gather the fruit into their own basket."

What are the decisions? In Seymour v. McCormick, 16 How. 480, 14 L. Ed. 1024, and Mayor v. Ransom, 64 U. S. (23 How.) 487, 16 L. Ed. 515, are expressions indicating the necessity of reasonably definite proof; but neither case presents for decision the point now under discussion. The question, however, was squarely raised and passed upon in Suffolk Co. v. Hayden, 70 U. S. (3 Wall.) 315, 18 L. Ed. 76.

It appeared that Hayden had a patent upon improvements in machines for cleaning cotton, that the Suffolk Company had infringed and that no sales or licenses had been granted; but the court below permitted an expert to describe the use and advantages of the invention as compared with the previous methods, and the plaintiff also proved the amount of cotton that had been cleaned by the infringing machines. The court charged the jury that the plaintiff was entitled to the actual damages sustained from the infringement, and said:

"You will look at the value of the thing used, and ascertain that value by all the evidence as to its character operation, and effect. You will take into view the value of that which the defendants have used belonging to the plaintiff."

This charge was assigned as error. The opinion of the Supreme Court was by Mr. Justice Nelson. The assignment of error was over-ruled, and the court said:

"This question of damages, under the rule given in the statute, is always attended with difficulty and embarrassment both to the court and jury. There being no established patent or license fee in the case, in order to get at a fair measure of damages, or even an approximation to it, general evidence must necessarily be resorted to. And what evidence could be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results? With a knowledge of these benefits to the persons who have used the invention, and the extent of the use by the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner, by the piracy, instead of the purchase of the use of the invention."

The principle of Suffolk v. Hayden was frequently applied by the Supreme Court. In Philp v. Nock, 84 U S. (17 Wall.) 460, 462 (21 L. Ed. 679), Mr. Justice Swayne said:

"The measure of damages to be recovered against infringers prescribed by the act of 1836 as well as by the act of 1870, is 'the actual damages sustained by the plaintiff.' Where the plaintiff has sought his profit in the form of a royalty paid by his licensees, and there are no peculiar circumstances in the case, the amount to be recovered will be regulated by that standard. If that

test cannot be applied, he will be entitled to an amount which will compensate him for the injury to which he has been subjected by the piracy. In arriving at their conclusion, the profit made by the defendant and that lost by the plaintiff are among the elements which the jury may consider."

In Burdell v. Denig, 92 U. S. 716, 720 (23 L. Ed. 764), Mr. Justice Miller, after saying that in an equitable accounting those profits which defendant has actually made, and in a suit at law, an established royalty, "constitute the primary and true criterion of damages," nevertheless adds:

"No doubt, in the absence of satisfactory evidence of either class in the form to which it is most appropriate, the other may be resorted to as one of the elements from which the damages or the compensation may be ascertained."

Birdsall v. Coolidge, 93 U. S. 64, 70 (23 L. Ed. 802), illustrates that the "established royalty" measure is not conclusive. Mr. Justice Clifford said:

"Still, it is obvious that there cannot be any one rule of damages prescribed which will apply in all cases, even where it is conceded that the finding must be limited to actual damages. Frequent cases arise where proof of an established royalty furnishes a pretty safe guide both for the instructions of the court and the finding of the jury. Reported cases of undoubted authority may be referred to which support that proposition; and yet it is believed to be good law, that the rule cannot be applied without qualification, where the patented improvement has been used only to a limited extent and for a short time, but that in such a case the jury should find less than the amount of the license fee; and it is admitted in several cases that the circumstances may be such that the finding should be larger than the royalty."

In Root v. Railway Co., 105 U. S. 189, 196 (26 L. Ed. 975), Mr. Justice Matthews quotes with apparent approval from Suffolk v. Hayden:

"Where there is no established patent or license fee in the case, or even an approximation to it, general evidence must necessarily be resorted to. * * *
"And what evidence * * * could be more appropriate and pertinent than that of the utility and advantages of the invention?"

The principle was again distinctly recognized by Mr. Justice Brown, when he said, in Sessions v. Romadka, 145 U. S. 29, 45, 12 Sup. Ct. 799, 803 (36 L. Ed. 609):

"This court has, however, repeatedly held that, in estimating damages in the absence of a royalty, it is proper to consider the savings of the defendant in the use of the patented device;"

although this comment loses some of its force, because the case before the court was an accounting for profits.

In the lower federal courts, also, the principle of Suffolk v. Hayden has been repeatedly applied. In Judson v. Bradford, Fed. Cas. No. 7,564, what evidence was given affecting the amount of damages does not appear from the report. Mr. Justice Clifford said:

"Frequent cases arise where proof of an established royalty furnishes a pretty safe guide for the instructions of the court and the finding of the jury, but cases also arise where it cannot be applied without qualification, as where a patented improvement has been used only to a limited extent and for a very short period. Proof of a single license was given in this case, but it cannot, in view of the circumstances, be regarded as affording the only measure of

compensation to which the plaintiff is entitled. Where there is proof of an established license fee, it may, in a case of protracted infringement, be regarded as a pretty safe guide; but the proof in this case is not of that character, and, in such a case, general evidence may be resorted to as the basis of decision.

"Neither party having furnished any definite evidence as to the amount of the injury sustained by the plaintiff, the court is compelled to estimate the same from evidence introduced upon the subject. Weighed in review of the whole evidence, as the question must be, the court finds that the plaintiff is entitled to recover, as compensation for the injury occasioned by the infringement, the sum of $300. * * *"

In Westcott v. Rude (C. C.) 19 Fed. 830, 833, the accounting was by a master, but profits had been waived and damages only were involved. The evidence was held insufficient to show a fixed, established royalty. In the course of the discussion, District Judge Woods said, "The question is, What is a reasonable royalty?" and the case was remanded to the master for further evidence.[3]

In Wooster v. Thornton (C. C.) 26 Fed. 274, 276, the question was as to the amount of damages for infringement before any license fee was established. District Judge Wheeler said:

"It is understood that an established royalty or license fee is evidence, and not an absolute test, of value. Whether the situation was such that the value was equal to the license fee before the latter became established was a question of fact for the master. The weight of the evidence was for him. The court cannot say, as matter of law, that the license fee, which did not become established until afterwards, should govern."

In Graham v. Plano Co. (C. C.) 35 Fed. 597, it seemed that there was no fixed royalty. So experienced a patent judge as Judge Blodgett, after finding that "no customary charge or royalty had been fixed," awarded damages at the rate of $3 per machine "as most nearly measuring or approximating the compensation or damages to which the complainant was entitled."

In Ross v. Montana Co. (C. C.) 45 Fed. 424, 431, District Judge Knowles charged the jury:

"You are instructed upon the question of the measure of the damages that in this case the proper method of assessing plaintiff's damages, if you find that he is entitled to recover any, is for you to ascertain and determine what would have been a reasonable royalty for the defendant to have paid for the use of the cars in question at so much per car."

In Lee v. Pillsbury (C. C.) 49 Fed. 747, District Judge Nelson charged the jury:

"If * * * [plaintiff's] rights have been invaded under this patent by the defendants, then he is entitled to actual damages, and the question then presented is, What amount is he entitled to recover? You can readily see, where there is no license fee, no price fixed for the royalty, and nothing disclosed which would show that the patentee puts on the market a machine, for the use of which he charges so much, it is a very difficult matter to determine

---

[3] Later, the master reported a "reasonable royalty," and judgment was entered. The Supreme Court (Rude v. Westcott, 130 U. S. 152, 9 Sup. Ct. 463, 32 L. Ed. 888) set it aside because the evidence on which the master acted did not sufficiently support his conclusion. If all right to recover necessarily disappeared when the effort to show an established royalty failed, it would have been natural to dispose of the case by saying so.

what the amount of damages may be in a certain case; but, like all questions presented to a jury for their determination, the plaintiff is bound and required to give some data, and must furnish the jury with evidence, so that they may be enabled to come to a proximate amount of the damage which the patentee has sustained by the infringement. In other words, general evidence may be resorted to for the purpose of furnishing data for the jury to come to a conclusion. * * * Upon those data you are furnished with something by which you can arrive at perhaps not an accurate, but an approximate conclusion as to what amount of damage has been suffered by the plaintiff."

In Brickill v. Mayor, 60 Fed. 98, 101, 8 C. C. A. 500, 503, the plaintiff's evidence showed that there was no established license fee, but that the defendant had made certain savings by using the patented device. The court below had said to the jury that there was no established royalty so as to fix the "primary and true criterion" of damage and value, and had charged:

"If you find in favor of the plaintiffs, you should consider the utility and advantage to the defendant of the use of the patented device, as compared to any other means of obtaining similar results which were open to the defendant to use, and you may consider the cost of using one as compared with the cost and savings to the defendant of using the other; and from these data, if proven to you, you should ascertain, in the exercise of a sound judgment, what would be a fair compensation to the plaintiffs for the damage which they have sustained by reason of the defendant having infringed, instead of having purchased the right to use the invention."

It will be noticed that the defendant's savings or profits were not to be taken as the measure of plaintiff's damages, but only as a part of the data from which fair compensation to plaintiff was to be determined. The Circuit Court of Appeals of the Fourth Circuit said:

"The rule now well established relative to the question of damages in cases of this kind was properly given by the court to the jury."

The case is no less authority upon the proposition it announces because the jury, under this instruction, had found only nominal damages.

In Hunt v. Cassiday, 64 Fed. 585, 587, 12 C. C. A. 316, 318, and after it had been decided upon a previous appeal that the proof did not show an established license fee, it was said, by the Circuit Court of Appeals for the Ninth Circuit:

"The plaintiff was clearly entitled to damages for the infringement. If there had been an established royalty, the jury could have taken that sum as the measure of damages. In the absence of such royalty, and in the absence of proof of lost sales or injury by competition, the only measure of damages was such sum as, under all the circumstances, would have been a reasonable royalty for the defendant to have paid. This amount it was the province of the jury to determine. In so doing, they did not make a contract for the parties, but found a measure of damages."

Recognizing this as the established rule, Mr. Walker, in his third edition (1895, § 563, p. 432), said:

"Where damages cannot be assessed on the basis of a royalty nor on that of lost sales nor on that of reduced profits, the proper method of assessing them is to ascertain what would have been a reasonable royalty for the infringer to have paid. In determining this point where the infringement consisted of making and selling, or in selling after a purchase, the profits of the defendant may be considered; and where the infringment consisted in using,

the cost and the utility of the patented process or thing as compared with the other process or things known at the time of the infringement and capable of doing similar work may be the leading guides. But those profits and advantages do not alone show what a reasonable royalty would have been, because it would not be reasonable for a royalty to be as much as the entire benefit derived from the business by a licensee. Therefore an instruction to the jury that the plaintiff was entitled to recover whatever value the defendant had received from the use of the plaintiff's invention was an error."

In Robinson on Patents, § 1061, Note 1, and in the course of an introduction to an exhaustive and careful analysis of the cases on damages and profits, the learned author says:

"Profits were, until recently, the only measure of damages in equity. They have always been admissible in evidence upon the question of the amount of damages at law."

The principle thus established by Suffolk v. Hayden, and generally recognized by the courts and text-books, has been more recently affirmed and applied by the Circuit Court of Appeals for the Third Circuit. In McCune v. B. & O. Ry. Co., 154 Fed. 63, 83 C. C. A. 175, Judge Buffington, speaking for that court, pointed out that the proposition that sometimes "general evidence must be resorted to" had been approved in Root v. Railway; and the Circuit Court of Appeals held that it was error in the court below to direct a verdict for nominal damages in the absence of any testimony tending to show an established royalty or impaired sales and in the face of testimony offered to prove the utility and advantages of the patented device and its appropriation and use by several railroads.

In Bemis Co. v. Brill Co., 200 Fed. 749, 759, 119 C. C. A. 229, 239, the same Circuit Court of Appeals, speaking again by Judge Buffington, expressly approved the finding of the referee fixing a certain sum as the "reasonable royalty or license fee which plaintiff should have received from the defendant for the latter's unlawful use of the plaintiff's invention without compensation"; and the master had fixed this sum (alternatively), upon the theory that there was no sufficient evidence to show either an established license fee or that the plaintiff had lost any sales.

The right of a plaintiff to recover in a suitable case this "reasonable royalty" would probably be unquestioned, except for the decision of the Supreme Court in Coupe v. Royer, 155 U. S. 565, 583, 15 Sup. Ct. 199, 207 (39 L. Ed. 263) and its supposed overruling effect upon Suffolk v. Hayden. In Coupe v. Royer, the patent involved was upon a machine for converting hides into leather. Upon the trial, the patentee had established his patent and its infringement, but had put in no evidence whatever supporting an assessment of damages, except that he proved the amount of the defendant's profits or savings. The trial court instructed the jury that these savings were the measure of plaintiff's loss. The Supreme Court held that this was error; that defendant's profits could be recovered in equity but not, as profits, at law; and that the defendant's profits do not, ipso facto, constitute plaintiff's damages. In the opinion by Mr. Justice Shiras, Suffolk v. Hayden is not mentioned, nor is there any consideration of the right to recover "general damage" or "a reasonable royalty." The only sen-

tence in the opinion which has been thought to work a change in the law is this:

"Upon this state of facts, the evidence disclosing the existence of no license fee, no impairment of the plaintiffs' market, in short, no damages of any kind, we think the court should have instructed the jury, if they found for the plaintiffs at all, to find nominal damages only."

This cannot be rejected as mere dictum; it was said by way of indicating the practice to be observed upon a new trial, and so it must be considered as the ruling of the court; but its comparatively casual character warns us against giving it unintended effect. Indeed, the language of this sentence seems to have been carefully chosen so that it should not go beyond the instant case. Its conclusion is predicated not only upon the lack of evidence of an existing license fee or of an impairment of plaintiff's market, but also upon the lack of evidence of "damages of any kind." If the only possible recoverable damages depended on the existence of one or the other of the two specified criteria, there was no object in referring to other evidence of other damages of some other kind. We may note, in passing, that the case is distinguishable from all those of the class where plaintiff is engaged in marketing the patented article or in using the patented process and in marketing the product, because in these cases there is from defendant's competition necessarily an "impairment of the plaintiff's market." The particulars and the precise extent of that impairment may be impossible to prove, but that the impairment exists no one can doubt. We also note, with the greatest deference, that even when plaintiff is not himself marketing his device, nor practicing his process, it is often a fallacy to suppose that defendant's infringement does not "impair plaintiff's market." The patentee's exclusive right to the market extends for seventeen years; he is not obliged to find or create and to supply the demand at once; he may have good reasons, of policy or of necessity, for postponing his efforts; but the whole market for the whole period, nevertheless, belongs to him; and by so much as the infringing defendant supplies that demand and permanently fills that market before plaintiff offers to do so, by so much is plaintiff's eventual market impaired. As to articles of long life and to be sold in a limited field this eventual impairment would be about the same whether plaintiff, in the early years of his patent, was or was not manufacturing; as to articles of short life and of less limited demand, the impairment would be much less; but it always would be existent, theoretically, and often, practically. Judge Severens' comments in Brennan v. Dowagiac, supra, 162 Fed. at page 478, 89 C. C. A. at page 398, are here pertinent:

"A patentee may withhold the exploiting of his patent in a particular territory, or he may not be able at the time to extend his business therein. But this gives no right to an infringer to invade the territory and anticipate the sales which the patentee might make when he should desire and be able to carry his invention there for a profit which is legitimately his own. * * * The fact that the owner of a patent does not exercise his right, or cannot at the time do so to the full, gives no license to another, and the latter is liable for infringement, to the same extent as if the owner were exercising his right to the utmost. The owner has the same right as he has to any other property, which he may put to use or not as he chooses; and in such case the rule al-

ways is that, if a stranger without right seizes and uses it, he is bound to pay for such use, and it is no answer for him to say that the owner was doing nothing with it. If it be true, as has often been declared, that the exclusive right of a patentee is property, for the protection of which the public faith is pledged, it should have the same immunity from invasion, and its violation should be attended with the same consequences as in the case of other species of property."

In view of the facts before the court in Coupe v. Royer, and the form in which the pronouncement on the question was made, we cannot believe that the case should be taken as intended to overrule, without naming it, a decision so important and so generally followed as Suffolk v. Hayden. In this conclusion, we do not stand alone. The question arose almost immediately and was presented to Circuit Judge (now Mr. Justice) McKenna. He considered it exhaustively in Cassidy v. Hunt (C. C.) 75 Fed. 1012, and reached the conclusion that Suffolk v. Hayden is not overruled, and that a reasonable royalty remains as a measure of damages, to be applied in suitable cases. Judge McKenna's opinion and his review of the cases bearing on the point should be read at length; extracts from it will be insufficient.

In McCune v. B. & O. R. Co., supra, the Circuit Court of Appeals for the Third Circuit considered the same question and reached the same conclusion, although without reference to Cassidy v. Hunt. Judge Buffington's opinion is clear and persuasive.

On the other hand, opinions of the Circuit Courts of Appeals in the First, Second, Fifth, Eighth, and Ninth Circuits indicate that the authority of Suffolk v. Hayden is weakened or gone. It is noteworthy that the Circuit Court of Appeals for the Ninth Circuit, in Seattle v. McNamara, 81 Fed. 863, 26 C. C. A. 652, in an opinion rendered very soon after Cassidy v. Hunt, reached the contrary result, and did so without reference to Judge McKenna's opinion and without any of the analysis and consideration of the other cases by which his conclusion is strengthened. Whether the overruling effect of Coupe v. Royer will extend to a case where plaintiff had established a market is left undetermined. In City of Boston v. Allen, 91 Fed. 248, 249, 33 C. C. A. 485, 486, the Circuit Court of Appeals for the First Circuit, speaking by Judge Putnam, concludes that Coupe v. Royer, substantially overrules Suffolk v. Hayden. It is to be noted, however, in the Allen Case, that there was no evidence whatever bearing on the question of damages, except as to the amount of the travel over the ferry and "what related to the nature of the device" (which was a gangway for ferryboats). It may well be that such a case was precisely like Coupe v. Royer, and that there would still be, in many cases, ample room for a finding of reasonable royalty based upon testimony supporting such a conclusion. In Tompkins v. International Paper Co., 183 Fed. 773, 106 C. C. A. 529, the Circuit Court of Appeals for the Second Circuit takes a narrower view of Suffolk v. Hayden than was indicated by Judge Buffington, but still leaves room for the recovery of substantial damages where plaintiff was selling against defendant's competition. In Houston Co. v. Stern, 74 Fed. 636, 20 C. C. A. 568, the Circuit Court of Appeals for the Fifth Circuit expressly held that certain proffered evidence as to the reasonable value of the right to use the invention was properly ex-

cluded. This was held to be a matter of opinion; but the holding was without discussion and without consideration of the fact that the value of property is usually provable by opinion evidence. The court apparently considered Coupe v. Royer as establishing the broad rule that, in the absence of a fixed license fee or lost sales, nominal damages only can be given. The limitation of Coupe v. Royer to cases where there appeared not only neither of these classes of damage but also where there was "no evidence of any damage whatever" is not noted. In Brown v. Lanyon, 148 Fed. 838, 78 C. C. A. 528, the only effort was to recover defendant's profits as damages, or to recover damages measured by defendant's profits, and plaintiff's counsel conceded that, unless they could have such a recovery, they could have none. The Circuit Court of Appeals for the Eighth Circuit concluded, as it was bound to do, that Coupe v. Royer was conclusive against this claim. Whether general damages could be shown in any other way than by the two familiar criteria was not involved or decided, although the impression of the court evidently was that Coupe v. Royer should have a very broad effect.

Upon this review of the rules of damages and the decisions affecting this particular question, we are the better satisfied to adopt the conclusion of Judge McKenna and Judge Buffington and to hold that a "reasonable royalty," if the proper foundation is laid and if the primary measures cannot be adopted, may become the applicable criterion in an action at law. If this is true, the same result follows before a master in determining damages in an action in equity. It is settled in this court that the damages and the profits contemplated by the statute are quite distinct and separate (Yesbera v. Hardesty [C. C. A. 6] 166 Fed. 120, 92 C. C. A. 46), and the conflicting decisions and the nice questions as to accountability for defendant's profits, as such, have nothing to do with the question of damages. In cases at law, the jury finds the facts; in equity cases, the master does the same thing. The functions of the two in assessing damages are wholly analogous. As Mr. Justice Strong said in Locomotive Co. v. Penn Co. (C. C.) 2 Fed. 677, 682:

"There is no conceivable reason why the damages sustained by a patentee from the infringement of his patent are not the same whether he proceeds at law or in equity."

The amount of plaintiff's loss by the infringement, or, more specifically and in certain cases, the amount of a "reasonable royalty," is a question of fact. It may be determined by a master just as by a jury.

We have before us only the question of recovery of legal damages; there has been no reason to consider the recovery of the profits which the defendant has made as a trustee. The practical difficulties attending the patentee upon the two branches of recovery are somewhat analogous; and it was clearly in recognition of the unfortunate situation on the second branch that the Supreme Court, in Westinghouse v. Wagner, 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, made a deliberate effort to correct the resulting injustice; but the remedial effect of this decision is incomplete. It gives no help at all in cases where there are no profits; and even in cases where profits appear, its application to dissimilar facts must be uncertain. It

has been thought that the old rule as to standards of comparison remains unaffected (Schmertz Co. v. Western Co. [D. C.] 203 Fed. 1006, 1009); and that the rule announced in the Westinghouse Case does not extend to instances where the invention is in a semi-independent part of the structure (Seeger v. American Co. [D. C.] 212 Fed. 742, 750; and see our own comments in Dunn v. Standard, 204 Fed. 617, 619, 123 C. C. A. 111, and in Herman v. Youngstown Co., 216 Fed. 604, 132 C. C. A. 608, opinion this day filed). The books are full of cases where damages or profits have been allowed upon reasoning that poorly satisfies the rules of proof as applied in other controversies, and the cases present a constant and uncertain contest between the· desire to do what seems to be justice and the necessity of observing legal rules. If the conclusion which we now reach is eventually approved by the Supreme Court, it will be because that tribunal thinks there has been a general misapprehension regarding the effect of Coupe v. Royer similar to the general current misconstruction which it found had grown up regarding Garretson v. Clark †; and it may be that the rule which we are here stating will afford the means by which the courts can, in most instances, feel reasonably satisfied that substantial justice is done and also that the result is reached with due regard to all applicable general rules of law.

The present case impresses us as one which may be suitable for the application of this rule; although whether it is or not we cannot now decide. It is enough to say we see a fair probability that plaintiff might be able to put· in proofs affording a sufficient basis for a reasonably accurate estimate of the damages which plaintiff's business suffered by reason of the infringement, and the case, upon the Frumentum Company's appeal, is reversed and remanded for that purpose only, but without costs. Upon the Lauhoff appeal, the case is affirmed, with costs.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† 111 U. S. 120, 4 Sup. Ct. 291. 28 L. Ed. 371.