## NYE TOOL & MACHINE WORKS v. CROWN DIE & TOOL CO.

(District Court, N. D. Illinois, E. D.    February 3, 1921.)

### No. 1514.

1. **Patents ⬅═193, 286—Patentee may assign rights against particular infringer, and assignee may sue.**

   Under Rev. St. § 4898 (Comp. St. § 9444), providing that "any patent, or any interest therein, shall be assignable in law by an instrument in writing," the owner of a patent may assign his rights thereunder against a particular infringer, without more, and such an assignment vests the assignee with an interest in the patent, which will support a suit against such infringer.

2. **Patents ⬅═313—Suit for infringement dismissed.**

   A suit for infringement dismissed for the purpose of enabling the parties to obtain a speedy decision from the appellate court of the question of complainant's right to maintain the suit.

In Equity. Suit by the Nye Tool and Machine Works against the Crown Die & Tool Company. On motion to dismiss bill. Motion granted.

Dyrenforth, Lee, Chritton & Wiles, of Chicago, Ill., for plaintiff.

Florence King, of Chicago, Ill., for defendant.

CARPENTER, District Judge. Plaintiff sues for infringement of United States patent No. 1,033,142, and for an accounting.

[1] The right and title of plaintiff in the patent, as shown in the bill, is based upon the following agreement:

"Whereas, Reed Manufacturing Company, a corporation of Pennsylvania, is the owner of letters patent of the United States, No. 1,033,142, for a machine for forming screw thread cutting devices, granted July 23, 1912, on an application of Wright & Hubbard; and

"Whereas, under said patent said Reed Manufacturing Company has the right to exclude others from manufacturing, using and selling the devices of said patent; and

"Whereas, it is believed by the parties that Crown Die & Tool Company, a corporation of Illinois, has been manufacturing and using devices in infringement of said patent; and

"Whereas, Nye Tool & Machine Works is engaged in the manufacture of dies with which the dies made by said Crown Die & Tool Company, by the use of said infringing machine, are in competition; and

"Whereas, Nye Tool & Machine Works is desirous of acquiring from Reed Manufacturing Company all of its rights of exclusion under said patent, so far as the same may be exercised against the Crown Die & Tool Company, together with all rights of the Reed Manufacturing Company against the Crown Die & Tool Company arising out of the infringement aforesaid:

"Now, therefore, in consideration of one thousand dollars ($1,000.00), and other good and valuable considerations, the receipt of which is hereby acknowledged, the Reed Manufacturing Company hereby assigns and sets over to the Nye Tool & Machine Works all claims recoverable in law or in equity, whether for damages, profits, savings, or any other kind or description, which the Reed Manufacturing Company has against the Crown Die & Tool Company arising out of the infringement by the Crown Die & Tool Company of the Wright & Hubbard patent No. 1,033,142, and for the same consideration, assigns and sets over all the rights which it now has arising from said patent of excluding the Crown Die & Tool Company from the practice of the inven-

tion of said patent, the intention being that, in so far as concerns the exclusion of the Crown Die & Tool Company under said patent, the Nye Tool & Machine Works shall be vested with as full rights in the premises as the Reed Manufacturing Company would have had had this assignment not been made, and that the Nye Tool & Machine Works shall have the full right to bring suit on said patent, either at law or in equity against said Crown Die & Tool Company, and for its own benefit, to exclude the Crown Die & Tool Company from practicing the invention of said patent, and for its own use and benefit to collect damages which may arise by reason of the future infringement of said patent by the Crown Die & Tool Company; but nothing herein contained shall in any way affect or alter the rights of the Reed Manufacturing Company against other than the Crown Die & Tool Company, and for the same consideration, all rights as are herein given against the Crown Die & Tool Company are given as against any successor or assignee of the business thereof.          Reed Manufacturing Company,
                                        "By P. D. Wright, its President."

The defendant has moved to dismiss because:

(1) The bill charges infringement of a patent in which plaintiff has no title.

(2) The owner of the entire or any part of the legal title to the patent sued on is not made a party to the suit.

(3) The bill shows on its face that the plaintiff has no interest in the patent sued on.

(5) The court is without jurisdiction.

Three other grounds for dismissal are assigned, but relate to matters outside of the present record.

Plaintiff has acquired every right which the patentee ever had under his patent as against the defendant, and the record does not disclose that plaintiff has received, by license or otherwise, any immunity from suit by the patentee under the patent involved. An examination and study of a patent grant necessarily leads one to the conclusion that, inasmuch as the patentee has the natural right to make, use, and sell everything which he makes, the only thing he receives by virtue of his patent is the right to exclude others from exercising his natural rights. The right to exclude, being in reality all that the patentee receives from the government, which he did not have before, it is difficult to perceive why, under section 4898 of the Revised Statutes (Comp. St. § 9444), providing that "any patent, or any interest therein, shall be assignable in law by an instrument in writing," the assignment in the instant case does not convey substantial rights upon which action may be based.

The patentee's right to exclude may be subdivided territorially. This has long been settled. If the right to exclude from all of the states west of the Mississippi river is in the patentee, why not the right to exclude in any one state; if in any one state, why not in any one city; if in any one city, why not in any one street; if in any one street, why not in any one building; if in any one building, why not in any office in that building; if in any office, why not any one individual in that office. It would seem, if the statute provides that "any interest" in the patent may be assigned, the mere question of the size of that interest is unimportant.

The real question here involved cannot be lost sight of by even the most careful consideration of cases with reference to exclusive and non-

exclusive licenses. There is a vast difference between a mere grant of immunity—a covenant not to sue—and the absolute conveyance of a part of the patent. The latter passes title; the former provides merely that the patentee shall exercise his rights of exclusion on behalf of the licensee.

I cannot see that any question of public policy is involved. On the argument it was suggested that grants of this nature would lead to innumerable suits. On the other hand, there can never be more suits on a patent than there are infringers, and if there are a million infringers, having no joint interest in their infringements, separate suits must be maintained against each, if they persist in their wrongdoing. The test should be rather from the standpoint of the defendant, and if he can be sued once only for his tort, the law is satisfied.

The defendant in this case would have been liable to suit by Reed Manufacturing Company, and would have been obliged to defend for any infringement. How, then, can it complain if the Reed Manufacturing Company sells its right to exclude the defendant from using the patented rights. From the defendant's standpoint it is no better nor worse off than if the original patentee were plaintiff. The patentee has wholly divested itself of all its rights as to the defendant in this case, and any action between the parties here would be a complete defense to any suit brought by the Reed Manufacturing Company.

Questions of public policy do not seem to militate against such a conveyance. The purpose of the patent law is exclusion, and the declared policy seems to permit these exclusive rights to be subdivided and transferred at will. The public is not in the slightest degree interested in whether the plaintiff, to accomplish its lawful purpose of exclusion, bought more of the patent than was needed, or only just enough. Clearly, it does not lie with the infringer to urge matters of public policy as to the method in which his wrongdoing is to be stopped.

The real party in interest has brought the suit. Defendant claims that the owner of the patent is not a party. Such is not the fact. The owner of all the patent rights may not be a party, but the owner of all the patent rights necessary for a determination of this suit is the plaintiff. Equity rule 37 (198 Fed. xxviii, 115 C. C. A. xxviii) would seem to settle all difficulties on this point.

[2] I am of the opinion that as a matter of law the motion to dismiss should be overruled. There are, however, serious considerations which lead me to a different result in this case. I have felt that Congress long ago should have invested in the judges of the federal courts of first instance the power to certify questions of law to the various courts of appeal, in order that serious legal differences between the parties might be settled in advance of a great expenditure of time and money. Many cases in chancery have gone to a reference before the master, and prolonged hearings had on the merits, and after final decree the court of review has settled legal issues which, if known in advance, would have prevented the reference.

In this case it was admitted in the argument that the interest of the plaintiff was acquired for the sole purpose of anticipating a possible

adverse decision in a suit on another patent. This was stated openly. The parties understood it. If they know now their exact legal status in the present case, their course of conduct in the other litigation, so far as these matters are concerned, will be determined. I am very much disinclined, however positive I am in my views as to the motion to dismiss here, to let them go to final hearing without knowing exactly what their rights are.

For the purpose of enabling the parties to have justice speedily, and without any more purchase than is absolutely necessary, I believe the motion to dismiss should prevail; and it is so ordered.