### AMERICAN TELEPHONE & TELEGRAPH CO. v. RADIO AUDION CO. et al.

(District Court, D. Delaware.   April 22, 1922.)

No. 461.

**1. Patents ⬳211(1)—Licensor held without power under the contract to grant immunity to another for future infringements.**

Where the owner of patents granted an exclusive license thereunder, subject only to certain reservations, expressly stated not to include any transferable rights, the contract further providing that either party might bring suits for infringement by others "within the fields in which it possesses rights" and retain the proceeds of such suits, the licensor *held* without power to grant immunity to an infringer for future infringements.

**2. Patents ⬳206—Grant of immunity for future infringements equivalent to license.**

A grant of immunity from suit for future infringements of a patent is equivalent to a license.

**3. Patents ⬳286—Licensee may maintain suit for infringement, where licensor is contributory infringer.**

While it is the general rule that suits for infringement must be brought in the name of the owner of the patent, and cannot be maintained in the name of a licensee alone, where the licensor is the infringer, or a contributory infringer, suit may be maintained in the name of the licensee alone.

**4. Patents ⬳290—Infringer and contributory infringer may be joined as defendants.**

Infringement is a tort, and an infringer and one who induces or contributes to the infringement are liable in solido and may be joined as defendants.

**5. Patents ⬳259—Licensor held contributory infringer.**

A licensor, which undertook for a consideration to grant immunity from suit to an infringer, in violation of its contract with a licensee, *held* to have contributed to the infringement, though it had the right to do itself things which were done by the infringer.

**6. Patents ⬳301(1)—Complainant held entitled to an injunction against infringement.**

Where a defendant without right makes and sells articles embodying the invention of a patent, complainant, whose rights are thereby violated, *held* entitled to an injunction, regardless of the fact that such defendant acted under a contract with its codefendant, to which complainant was not a party, purporting to grant it immunity for the infringement.

In Equity.   Suit by the American Telephone & Telegraph Company against the Radio Audion Company and the De Forest Radio Telephone & Telegraph Company.   On motion to dismiss bill and motion by complainant for preliminary injunction.   Motion to dismiss denied, and motion for injunction granted.

Charles Neave and William R. Ballard, both of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Darby & Darby, of New York City, and Ward, Gray & Neary, of Wilmington, Del., for defendants.

MORRIS, District Judge.   The plaintiff, American Telephone & Telegraph Company, having filed its bill of complaint charging the defendant Radio Audion Company with infringement, and the defendant

⬳For other cases see same topic & KEY-NUMBER in 'all Key-Numbered Digests & Indexes

De Forest Radio Telephone & Telegraph Company with contributory infringement, of claims 4 and 6 of letters patent No. 841,387, for improvement in devices for amplifying feeble electric currents, and claims 2, 3, 6, 14, 18, and 21 of letters patent No. 879,532, for improvement in space telegraphy, moved for a preliminary injunction. The motion has been heard upon bill, answer, affidavits, and exhibits.

[1] The defendants admit that the patents in suit are valid, and that the Audion Company has been making and selling articles—"audions" —embodying the inventions of those patents. They seek to justify such manufacture and sale, however, by an immunity agreement entered into in November, 1919, between the De Forest Company and the Radio Lamp Corporation; the rights of the latter under that agreement having been subsequently acquired by the defendant Audion Company. The plaintiff asserts, on the contrary, that by reason of an agreement of 1917 made between the De Forest Company (admitted by all parties to the suit to have been then vested with title to the patents) and Western Electric Company, Inc., the De Forest Company was at the time of making the contract of 1919 without such interest in the patents as would enable it to confer upon the Audion Company immunity from liability for future acts of the latter company that, but for the instrument of 1919, would be infringements of the patents in suit. Portions of the contract of 1917 here pertinent are:

"Now, in consideration of one dollar ($1.00) and other good and valuable consideration paid to the said De Forest Company by the said Western Company, * * * the said De Forest Company hereby * * * grants and agrees to grant to the Western Company a license (free of royalties or other payments other than those herein specified) to make, use, install, operate, and lease, and to sell or otherwise dispose of to others for sale, installation and operation, apparatus and systems embodying or made or operating in accordance with the following inventions: [Among which are included the inventions covered by the patents in suit.] * * *

"The said license is granted, * * * for the full terms of the said patents granted or to be granted, and the license is granted for all transferable rights of said De Forest Company of any kind or nature whatsoever in said inventions, patents, and applications, except the rights hereinafter expressly reserved to itself by the De Forest Company. The said license granted and to be granted to the Western Company is exclusive, except for the aforesaid rights now held by the American Telephone & Telegraph Company, and except for the rights expressly reserved herein by the De Forest Company.

"The De Forest Company reserves to itself the following rights: * * * (4) Nonexclusive, nontransferable, personal rights with respect to radio communication, under all the patents, applications, and inventions included in this agreement for the following purposes only: * * *

"It is understood and agreed that the Western Company its successors, legal representatives and assigns, and the De Forest Company may, respectively, institute and conduct suits against others for infringement of any of said patents within the fields in which it possesses rights, but all such suits shall be conducted at the expense of the party bringing them, which party shall be entitled to retain any judgment recovered in any such suits."

Pertinent portions of the contract of 1919 are:

"Whereas, De Forest Radio Telephone & Telegraph Company, a corporation duly organized and existing under and by virtue of the laws of the state of Delaware, is the owner of United States letters patent No. 841,387, issued January 15, 1907, to Lee De Forest and No. 879,532 issued February 18, 1908, to Lee De Forest, and owns the right to make, use, and sell apparatus embody-

ing the inventions of said letters patents for amateur and experimental purposes, and owns the right to sue for and collect damages for infringement of said letters patents, or either of them, and to retain any sum recovered in such suit; and

"Whereas, Radio Lamp Corporation, a corporation duly organized and existing under and by virtue of the laws of the state of New York, desires to make apparatus embodying the said inventions of said letters patents without litigation with the said De Forest Company; and

"Whereas, De Forest Radio Telephone & Telegraph Company is desirous to avoid litigation and to grant immunity from suit for infringement of said letters patents, or either of them, by the manufacture and sale of apparatus embodying the invention of said letters patent, or either of them, to the said Radio Lamp Corporation: The following agreement by and between Radio Lamp Corporation, hereinafter called 'Radio,' and De Forest Radio Telephone & Telegraph Company, hereinafter called 'De Forest,' is made:

"(1) De Forest agrees to refrain from instituting or prosecuting any suit or suits against Radio by reason of its manufacture and sale of apparatus embodying the inventions of said letters patent, or either of them, during the life of this agreement. * * *

"(5) Radio agrees to pay De Forest twenty per cent. (20%) of the net sales price to the trade on each and every such device or apparatus embodying the inventions of said letters patent, or either of them, which Radio sells. * * *

"(16) This agreement shall be and continue in full force and effect until the expiration of both the letters patent hereinbefore referred to, when it shall terminate, unless sooner terminated under the provisions of paragraph (11) hereof."

[2] The obvious fact that after the agreement of 1917 the De Forest Company could not grant licenses under the patents in suit is expressly admitted by the defendants. They assert, however, that the De Forest Company, having under the express terms of that agreement the right to sue infringers of the patents and retain the benefits of suit, had the appurtenant right to settle such suit; that, having the right to sue and settle, it could continue to sue and settle, and that, having such rights, it could likewise grant immunity to an infringer from such suits; that the contract of 1919 is such an immunity contract, and not a license. In support of their contention that an immunity contract with respect to future infringements is not a license, the defendants cite and rely upon Nye Tool & Machine Works v. Crown Die & Tool Co. (D. C.) 270 Fed. 587, and Seibert Cylinder Oil Cup Co. v. Detroit Lubricator Co. (C. C.) 34 Fed. 216. As I understand the former case, it does not attempt to distinguish a contract or covenant granting immunity from suit and a license, but only between such immunity contract and an assignment. The latter case holds that a contract whereby one, in consideration of the payment of royalties, agrees not to sue another for future infringements, is in substance and effect a license. The court at page 221 added:

"No particular form of words is necessary to constitute a license. Anything which confers upon another the right to do an act, which without such act would be illegal, is sufficient for that purpose."

Furthermore, the Court of Appeals for the Sixth Circuit, in Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 290, 25 C. C. A. 267, 270 (35 L. R. A. 728), said:

"A license operates only as a waiver of the monopoly as to the licensee, 'and estops the licensor from exercising its prohibitory powers in derogation of the

privileges conferred by him upon the licensee.' Rob. Pat. §§ 806–808. It has been said that the sole matter conveyed in a license is the right not to be sued."

I think that the contract of 1919 is in legal effect a license, and that by reason of the lack of power of the De Forest Company then to grant a license under the patents in suit that contract affords no protection to the Audion Company, unless, as the defendants further claim, the plaintiff has acquiesced in the contract between the defendants, or is estopped from denying its validity. I deem it sufficient to say that I have examined with care the evidence adduced by the defendants in support of these defenses, and have found nothing leading me to believe that the defendants will be able at the final hearing to prevail upon these grounds. The same is true as to laches.

[3] Another position taken by the defendants is that the contract of 1917 did not divest the De Forest Company of title to the patents, that the plaintiff is a mere licensee, that a mere licensee may not sue strangers who infringe, and that, consequently, this suit may not be maintained by the American Telephone & Telegraph Company. The general rule that suits for infringements of patents must be brought in the name of the owner of the patent, and not in the name of a licensee alone, is well settled (Littlefield v. Perry, 21 Wall. 205, 22 L. Ed. 577; Waterman v. Mackenzie, 138 U. S. 252, 11 Sup. Ct. 334, 34 L. Ed. 923), and is not here questioned. Yet it is equally well settled by the cases laying down the general rule that, when necessary to prevent an absolute failure of justice, as where the owner of the patent is the infringer, suit may be maintained by and in the name of the licensee alone.

[4] It is likewise true that joint infringers are joint tort-feasors, and may be joined as defendants. An infringer and one who induces or contributes to the infringement are likewise liable in solido, and so may be joined as defendants. In Thomson-Houston Electric Co. v. Ohio Brass Co., 80 Fed. 712, 721, 26 C. C. A. 107, the Court of Appeals for the Sixth Circuit, consisting of Judges Taft, Lurton, and Clarke, speaking through the present Chief Justice, said:

"An infringement of a patent is a tort analogous to trespass or trespass on the case. From the earliest times, all who take part in a trespass, either by actual participation therein or by aiding and abetting it, have been held to be jointly and severally liable for the injury inflicted. There must be some concert of action between him who does the injury and him who is charged with aiding and abetting, before the latter can be held liable. When that is present, however, the joint liability of both the principal and the accomplice has been invariably enforced."

It seems necessarily to follow that, if the owner of the patent be a contributory infringer, a suit may be instituted by a licensee alone and in his own name against such owner and the infringer, and particularly so if the owner of the patents has by contract or otherwise placed himself in a position in which he is estopped from maintaining an action against such infringer. Swain v. Seamens, 9 Wall. 254, 274, 19 L. Ed. 554. Consequently, if it appears that the De Forest Company is a contributory infringer, as alleged in the bill of complaint, it becomes unnecessary to determine whether the plaintiff is vested with title to the patents in suit, or is a mere licensee.

[5] Is the De Forest Company such an infringer? That company points out that under the contract of 1917 it concededly has the right to do everything that the Audion Company is doing, and from this fact concludes that it can in no event be successfully charged with infringement of any sort. As I view it, however, the premise does not support the conclusion. The acts of the Audion Company are its acts, and not the acts of the De Forest Company. The acts of the Audion Company are, so far as now appears, wrongful. One who aids, induces, or contributes to the wrongful acts of another is also a wrongdoer. If the wrongful acts are acts of infringements of patents, he who induces, aids, or contributes to such infringement is a contributory infringer. Goodyear Shoe Machinery Co. v. Jackson, 112 Fed. 146, 148, 50 C. C. A. 159, 55 L. R. A. 692. Furthermore, it has been long settled that one of two or more co-owners of a patented invention may be guilty of infringement against the others. Robinson on Patents, § 913; Herring v. Gas Consumers' Association (C. C.) 9 Fed. 556.

The ultimate question, then, is whether the De Forest Company has, in any manner, induced, aided, or contributed to the infringements of the Audion Company. Admittedly it made the agreement of 1919 with the Audion Company. Thereby it purported to relieve the Audion Company from liability to suit for its future acts in making and selling articles embodying the principles of the patents sued upon. This the De Forest Company was without right to do. There is no suggestion in the record that the Audion Company would have engaged in the infringing practices without having first obtained the contract of 1919. Moreover, the De Forest Company profits by the use by the Audion Company of the inventions of the patents. Such acts are sufficient to make the De Forest Company a contributory infringer, and jointly liable with the Audion Company. Robinson on Patents, § 1104, says:

"All persons who participate in the infringement * * * by directly sharing in its benefits, may be joined as defendants. A corporation may be made defendant when it profits by the unlawful use of the invention. * * *"

American Bell Telephone Co. v. Albright (C. C.) 32 Fed. 287, was an infringement suit. It therein appeared that telephone instruments made by the People's Company were furnished to one Ghegan and installed by him for different persons under a contract of lease and license made by the People's Company with Ghegan and the defendant. The instruments so put up infringed plaintiff's patents. It was testified that Albright entered into the arrangement with the People's Company merely for the accommodation of Ghegan (whose business was to put up telephones), as the company would not give the lease to Ghegan alone, and that Albright took no part in the business. Mr. Justice Bradley said:

"All the offending machines were put up under this contract, and in pursuance of it, and would not have been put up without it, so that it may be justly said that Albright, as a party to this contract, joined in inducing and bringing about the infringement complained of. Although Albright chose to let Ghegan have all the benefits of the contract, he was equally responsible with him for the consequences of putting up the instruments, equally responsible to the People's Telephone Company, and equally responsible to the com-

plaintant, whose patents were infringed. He must be deemed to have joined Ghegan in putting them into use, to have aided and abetted in the act. The infringement of the complainant's patents was, therefore, a joint tort of Ghegan and the defendant."

In Reliance Const. Co. v. Hassam Paving Co., 248 Fed. 701 (C. C. A. 9), it was held that a surety company, which in aid of an infringing paving contractor executed a bond to indemnify against liability for infringement the city for which the pavement was to be laid, thereby aided and abetted the contractor, assisted in inducing the infringement, and became jointly liable therefor. For the foregoing reasons, I think that the plaintiff, even if it be only a mere licensee and not the owner of the patents (as to which no opinion is now expressed), is not without right to maintain this suit in its own name and as sole plaintiff.

[6] The defendants make two further contentions, namely, that, even if the plaintiff is entitled to relief, its remedy is a suit at law for the breach of the 1917 contract, and not an injunction, and that "the existence of the immunity contract precludes a trial for infringement, and must be determined before the question of infringement can be heard." With respect to the former it need only be said that this case does not in this regard differ in principle from an infringement suit by an assignee of a patent against his assignor, or a like suit by a licensee of a patent against the owner thereof who infringes. In each instance, if the defendant without right makes, uses, or vends an article embodying the invention of the patent, the plaintiff is, under the circumstances here present, entitled to maintain a suit for an injunction. In support of its contention that the existence of the immunity contract precludes a trial for infringement, the defendant relies upon American Graphophone Co. v. Victor Talking Mach. Co. (C. C.) 188 Fed. 431, affirmed (3 C. C. A.) 188 Fed. 428, 110 C. C. A. 308. But the contract there involved was one still in force between the plaintiff and defendant, and not one between the defendants, to which the plaintiff was neither party nor privy.

Some of the questions hereinbefore considered were raised, not only in opposition to the motion for a preliminary injunction, but also in support of a motion to dismiss the bill, which was argued at the time the first-mentioned motion was heard. The consideration herein given to those questions applies to both motions.

I think the motion to dismiss should be denied, and the motion for a preliminary injunction granted.