**AMERICAN TELEPHONE & TELEGRAPH CO. v. RADIO AUDION CO. et al.**

(District Court, D. Delaware. May 16, 1925.)

No. 461.

**1. Patents ⬤319(1)—Finding of validity and infringement is conclusive that complainant has suffered damage.**

The exclusive right conferred by a patent is property, and an infringement constitutes a tortious taking of a part of that property; hence a finding of validity and infringement is conclusive that complainant has suffered damage, and the question is not open for consideration in accounting proceedings, the question being solely that of the amount of damages.

**2. Patents ⬤319(1)—When reasonable royalty is recoverable as damages.**

When complainant's damages from infringement are shown to have been substantial, but there is no established royalty nor proof of lost sales or reduced profits, the proper method of assessing the damages is to ascertain what would have been a reasonable royalty for the infringer to have paid.

**3. Patents ⬤319(1)—Factors entering into determination of reasonable royalty for use, stated.**

In determining what would be a reasonable royalty under a patent, the nature of the invention, its utility, advantages, and the extent of its use by the infringer are to be considered.

**4. Patents ⬤328—Reasonable royalty for use of radio patents determined.**

A reasonable royalty to be paid by an infringer of the De Forest patents, No. 841,387 and No. 879,532, for improvements in radio apparatus, fixed at 80 cents for each tube embodying the patented features made or sold by defendant.

In Equity. Suit by the American Telephone & Telegraph Company against the Radio Audion Company and the De Forest Radio Telephone & Telegraph Company. On accounting for infringement.

William R. Ballard, of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

Victor D. Borst, of New York City, William E. Decker, of Jersey City, N. J., and E. Ennalls Berl, of Wilmington, Del., for defendants.

MORRIS, District Judge. A decree having been entered in the suit of American Telephone & Telegraph Company against Radio Audion Company and De Forest Radio Telephone & Telegraph Company enjoining, pending the suit, the defendants from infringing De Forest patents Nos. 841,387 and 879,532 ([D.C.] 281 F. 200) and that decree having been affirmed upon appeal ([C. C. A.] 284 F. 1020), it was stipulated by the parties that the pleadings, affidavits, and exhibits constituting the record on the preliminary application should stand as the record upon final hearing, and that a decree should be entered upon that record and upon the opinions filed on the preliminary application. A decree was thereupon made awarding to the plaintiff a permanent injunction against both defendants and adjudging that the plaintiff recover of the Radio Audion Company and its receivers the profits and damages arising from the infringement. The accounting has been had before the court and not before a master.

In support of its claim for damages, the plaintiff has not shown or attempted to show by the evidence an established royalty, or that it has lost any sales or suffered any lessened profits by reason of the infringement. It asserts, however, that it may nevertheless recover general damage or, as it is sometimes called, a "reasonable royalty." The defendants in the accounting challenge the soundness of this position, in that, as I understand their grounds: (1) It does not appear from the evidence that the plaintiff has in fact been injured or suffered damage, and that, consequently, it has no claim for damages as distinguished from profits; and (2) that the evidence is not such as to enable the court properly to determine what sum would be a reasonable royalty. I am unable to agree with the first of these contentions.

[1] It has been conclusively settled that the exclusive right conferred by a patent is property, and that an infringement of the patent constitutes a tortious taking of part of that property. Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 648, 35 S. Ct. 221, 59 L. Ed. 398; United States Frumentum Co. v. Lauhoff (C. C. A. 6) 216 F. 610, 615, 132 C. C. A. 614. It seems to me inevitably to follow that a finding of validity and infringement is a finding that the person whose patent rights have been infringed has suffered damage. It would seem to be equally clear that a decree adjudging a patent to be valid and infringed and directing an accounting is conclusive upon the question of whether or not a plaintiff has been injured, and that that question is not open for consideration or discussion in the accounting proceedings. With respect to damages the question upon an accounting had before the master, or before the court, as the case may be, is solely one of amount. In the question of amount there are involved the subordinate questions: (1) Were the damages sustained nominal or sub-

stantial; (2) if substantial, by what standard is the amount thereof to be ascertained? It is, of course, true that if upon an accounting it appear that the patent though legally valid and infringed, is without real commercial value, or that its rank in the art is negligible and insignificant, or if, on the other hand, it appears that the patent is a valuable one, but the infringement was only a mere trifling infraction of plaintiff's rights, the value of the property of the plaintiff so tortiously taken by the defendant or converted to his use is nominal and not substantial, and in such cases only nominal damages, as distinguished from profits, can be assessed against the infringer. But if it be made to appear that the patent infringed is a broad one of great merit and value, and that the infringement has consisted of long-continued use upon a large scale by a defendant of the invention of the patent, it is obvious, the patent being property and the infringement, constituting a tortious taking or conversion of that property by a defendant to his use, that the damages are substantial and not nominal. The amount of such damages cannot, however, be ascertained by pure speculation.

[2] In cases disclosing an established royalty, or that plaintiff has been deprived by defendant's infringement of sales or profits that he otherwise would have made, the question of the amount of plaintiff's damages has presented relatively little difficulty. The more troublesome problem has been to find a standard by which the amount of plaintiff's damages, when shown to be substantial, could be estimated and measured with reasonable certainty and in a sufficiently accurate way when there is no evidence of an established royalty, lost sales, or lessened profits. But that problem, as I understand the cases, has now been solved. The standard determined upon and fixed is that of general damage or reasonable royalty. Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 648; United States Frumentum Co. v. Lauhoff, 216 F. 610, 132 C. C. A. 614; Bemis Car Box Co. v. J. G. Brill Co., 200 F. 749, 119 C. C. A. 229; McCune v. Baltimore & O. R. Co., 154 F. 63, 83 C. C. A. 175. The rule has been stated thus:

"Where damages cannot be assessed on the basis of a royalty nor on that of lost sales nor on that of reduced profits, the proper method of assessing them is to ascertain what would have been a reasonable royalty for the infringer to have paid." Walker on Patents (3d Ed.) § 563.

It is, of course, obvious that even in cases in which the only proper standard for the measurement of the damages is that of reasonable royalty, there may be lacking sufficient evidence to disclose what a reasonable royalty would be. The Dowagiac and Frumentum Cases, upon their presentation to the Supreme Court and the Court of Appeals, respectively, were instances of this type.

The evidence in the case at bar establishes that the plaintiff had certain rights either as owner or exclusive licensee, in the patents in suit. (D. C.) 281 F. 200. It likewise discloses that those patents were of great value. Mr. Meyers, under whose management the infringing three-electrode tubes were manufactured by the Radio Audion Company and who was a witness for the defendant, testified: "I believe it is generally agreed by the scientific world that, when Dr. De Forest inserted the grid, he gave the world radio." With respect to the extent of the infringement, it appears that the Radio Audion Company manufactured at least 36,330 infringing tubes. From an application to these facts of the principles hereinbefore ascertained and stated, it follows, I think, that plaintiff's property rights were of great value; that those rights were wrongfully and extensively converted by the Radio Audion Company to its own use; that such an extensive wrongful conversion by the Radio Audion Company to its own use of such valuable property of the plaintiff resulted in substantial, not nominal, damage to the plaintiff; and that, since there was no established royalty, and since the plaintiff has not lost any sales or suffered any lessened profits by reason of the infringement, the only standard of measurement of damages at all available to the plaintiff is that of reasonable royalty. But that standard is also unavailable to the plaintiff unless the evidence in the record is sufficient in character and amount to disclose what sum would constitute a reasonable royalty upon a tube embodying the inventions of the patents in suit.

[3] Does the evidence reveal what sum would be a reasonable royalty? I think it does. In Suffolk Mfg. Co. v. Hayden, 3 Wall. (70 U. S.) 317, 18 L. Ed. 76, "no sales had been made of the patent right by the plaintiff, or of licenses for the use of it, so as to establish a patent or license fee as a criterion by which to ascertain the measure of damages." The court below admitted evidence of the utility and advantage of this improvement over previous methods. In confirming this action, Mr. Justice Nelson said that in

such cases general evidence must necessarily be resorted to, and added: " * * * And what evidence could be more appropriate and pertinent than that of the utility and advantage of the invention over the old modes or devices that had been used for working out similar results? With a knowledge of these benefits to the persons who have used the invention, and the extent of the use by the infringer, a jury will be in possession of material and controlling facts that may enable them, in the exercise of a sound judgment, to ascertain the damages, or, in other words, the loss to the patentee or owner, by the piracy, instead of the purchase of the use of the invention." Suffolk Mfg. Co. v. Hayden was relied upon and followed by the Court of Appeals for this circuit in McCune v. Baltimore & O. R. Co. 154 F. 63, 64, 83 C. C. A. 175.

In the Dowagiac Case, in which there was no established royalty, the court said: "In that situation it was permissible to show the value by proving what would have been a reasonable royalty, considering the nature of the invention, its utility and advantages, and the extent of the use involved."

[4] The nature of the inventions of the patents here in suit, their utility and advantages, and the extent of the use involved, are all made manifest by the evidence in the record and have been hereinbefore pointed out. But in addition to such evidence, the record discloses a contract made between the Radio Lamp Company, the rights under which were subsequently acquired by the Radio Audion Company, and the De Forest Company on the 25th day of November, 1919, whereby the De Forest Company purported to grant immunity to the Radio Lamp Company from suit for infringement of the letters patent here involved by the manufacture and sale of apparatus embodying the invention of the letters patent. It was therein provided: "That the minimum sum that Radio shall pay De Forest under the terms of this agreement on any one or more devices or apparatus sold shall be the sum of one dollar ($1.00) each." It was therein further provided that after December, 1922, the minimum sum payable for each calendar month should be $3,000. Royalty at that rate was paid by the Radio Audion Company to the De Forest Company at least to and including September, 1921. In a contract made on the 29th day of April, 1919, between the De Forest Company and one Moorhead for the manufacture and sale of apparatus embodying the inventions of the patents in suit, it was provided that for sales under 20,000 in any one month the minimum royalty was to be 20 per centum of a sales price of not less than $4, or a minimum royalty of 80 cents. The sales of the Radio Audion Company did not in any one month amount to 20,000. The De Forest Company likewise made a like agreement for like purposes on the 25th day of November, 1919, with one Cunningham, under which the royalty provided was 80 cents per tube with a monthly minimum of $800. In view of the provisions of the contracts under which the De Forest Company and the plaintiff herein acquired and hold their respective rights (see 281 F. 200; De Forest Radio Tel. & Tel. Co. v. Radio Corporation of America [D. C.] 4 F.[2d] 134; Id. [D. C.] 3 F.[2d] 847), I think these three contracts pertinent evidence upon the question of the amount of a reasonable royalty. It is not shown, however, that any profit was obtained by the manufacturer under any of these contracts. Considering, without here reviewing or discussing, all the evidence pertinent to that question, and bearing in mind that the amount of damages assessed should not exceed the amount of damages clearly established by the evidence, I estimate, conclude, and find that a reasonable royalty for each of the infringing tubes made by the Radio Audion Company would have been 80 cents.

I further find that the defendant made from January 1, 1921, to May 2, 1922, 8,650 tubes; from May 3, 1922, to November 30, 1922, 20,868 tubes; from December 1, 1922, to December 31, 1922, and from January 1, 1923, to January 9, 1923, an aggregate of 6,812 tubes. And that the defendant sold from January 1, 1921, to May 2, 1922, 8,570 tubes; from May 3, 1922, to November 30, 1922, 19,194 tubes; from December 1, 1922, to December 31, 1922, 4,951 tubes; from January 1, 1923, to January 9, 1923, 747 tubes. I am of the opinion that the plaintiff is entitled to have its damages of 80 cents per tube assessed against either the number of tubes so found to have been made or the number of tubes so found to have been sold, and that, by reason of the different conditions prevailing with respect to bonds and otherwise in the several periods, such election may be made for each period. As the damages so to be assessed exceed the amount of profits which, as I view the evidence, were made by the defendant and its receivers, it would serve no practical purpose to state with particularity the items of charge and discharge as established by the evidence.