Joseph B. FILGER, Plaintiff,

v.

PLAX CORPORATION, Defendant.

Civ. No. 2782.

United States District Court
W. D. Kentucky,
at Louisville.

Oct. 1, 1957.

Wood, Herron & Evans, Cincinnati, Ohio, Ogden, Galphin & Abell, Louisville, Ky., for plaintiff.

Bullitt, Dawson & Tarrant, Louisville, Ky., for defendant.

BROOKS, District Judge.

Plaintiff, Doctor Joseph B. Filger, is the owner of a patent for a plastic squeeze bottle dispenser. By a letter dated May 6, 1952, and approved by the plaintiff on June 26, 1952, the defendant, Plax Corporation, a manufacturer of plastic bottles, agreed to pay royalty to the plaintiff "for each complete dispenser unit for nose drops or the like identical or substantially identical with that disclosed by Filger's United States Patent No. 2577321 of December 4, 1951, manufactured and sold by Plax on an order from Winthrop-Stearns, Inc., which the parties expect soon to be placed with Plax and on re-orders for like units."

Royalties were subsequently paid on a number of units, but in 1953 Plax advised Filger that production difficulties had made it necessary for Winthrop-Stearns to adopt a "new" unit and that the "new" unit was "not covered by the Plax-Filger agreement or by Filger Patent No. 2577321." Filger, contending that the "new" unit is substantially identical to that disclosed by his patent and is therefore covered by the royalty agreement, seeks judgment in this action for the additional amount of royalty claimed to be due him.

In preliminary proceedings on Filger's motion to strike certain portions of Plax's answer, which motion invoked the parol evidence rule, it was held that the agreement between the parties was an unambiguous integrated contract and the controlling factual issue for determination on the trial was whether or not the "new" complete dispenser units manufactured by Plax and sold to Winthrop-Stearns are identical or substantially identical with the disclosure of the Filger patent.

The Filger patent relates generally to a dispenser bottle formed from polyethylene combined with aspirating mechanisms to permit the dispensation of conventional nose and throat medication directly from the bottle. The patent discloses a preferred form of the dispenser and two modifications of the invention. These three embodiments are illustrated respectively in Figures 1–7, Figures 8–9 and Figures 10–11 of the drawings of the patent and are described in corresponding portions of the specifications. Figures 13–14 of the drawings illustrate a cap for the dispenser covered by the invention and show how it is attached to the bottle. The patent does not cover the bottle cap, although it does disclose it.

At the trial the complete dispenser unit on which royalty was paid was introduced in evidence as plaintiff's Exhibit 6 and will be herein referred to as Exhibit 6. This particular dispenser is the preferred form of the invention illustrated in Figures 1–7 of the patent, and the cap for it as well as for all modifications of the preferred form is shown by Figures 13–14. The dispenser unit manufactured and sold by Plax to Winthrop-Stearns on which royalty was not paid will be referred to herein as Exhibit 8. The Exhibit 8 dispenser, Filger contends, is "most identical" with the dispenser unit illustrated by Figures 8–9 of the patent which is a modification of the preferred form of the invention. It is admitted that this particular dispenser

unit was never manufactured and a model of it never made, and of course it could not be introduced in evidence. For convenience it will be referred to as Disclosure X. The primary reason for Filger's contention that it is "most identical" with Exhibit 8 is because the nasal insertion portion of Disclosure X is a separate element as is also true of Exhibit 8; whereas Exhibit 6 has a nasal insertion portion formed integrally with the bottle.

The original and expected order of dispenser units placed by Winthrop-Stearns, Inc., with Plax was for Exhibit 6 bottles. Only one reorder of Exhibit 6 was made, and it was cancelled on February 16, 1953. Continuously since that date Winthrop-Stearns, Inc., has ordered and Plax has manufactured large quantities of the Exhibit 8 dispenser. Since the cancellation of the second order the Exhibit 6 dispenser has not been manufactured by Plax or otherwise manufactured or commercially employed.

██ While it is true that the contract in suit is in the nature of a patent license agreement, it is not a license agreement as understood in patent law. As understood in patent law a license by the owner of a patent right, to make, use or vend a patented article is the transfer of any interest therein, for such purpose, less than that passing by assignment. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Watson v. United States, 10 Cir., 222 F.2d 689. In its simplest form a license under a patent means only leave to do a thing which the licensor would otherwise have a right to prevent and grants to the licensee merely a privilege that protects him from a claim of infringement by the owner of a patent monopoly. Western Electric Co. v. Pacent Reproducer Corp., 2 Cir., 42 F.2d 116, certiorari denied, 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771. In this case no question of infringement of the Filger patent is involved, and the coverage of the instant agreement is not confined to the claims of the Filger patent but deals with the broader field of what is disclosed by the patent. It is a suit on a simple

contract requiring the determination of but one controlling factual issue. To recover royalty on the Exhibit 8 dispenser sold by Plax to Winthrop-Stearns, Inc., the burden of proof is upon Filger to establish by a preponderance of the evidence that the Exhibit 8 dispenser is substantially identical to the complete dispenser unit disclosed by the Filger patent.

The evidence establishes that several differences exist between Exhibit 8 and the dispenser disclosed by the Filger patent, but the most obvious difference is the type of cap employed. Exhibit 8 utilizes a screw-threaded cap as compared to the friction or snap-on cap disclosed by the patent. The patent not only does not disclose a screw-threaded cap but teaches that polyethylene cannot readily be configurated to form screw threads. The application of the patent expressly states:

"A further problem exists in connection with the provision of a cap for a bottle formed from polyethylene to provide a seal when the bottle is not in use. Polyethylene cannot readily be configurated to form screw threads, and accordingly this invention utilizes the natural elastic properties of the material to provide a cap that can effectively be snapped in position to seal the bottle against loss of medication and to permit removal when desired."

In the trial of this case considerable evidence was introduced bearing on the difference between the two caps and conclusively established the superiority of the results obtained from a dispenser unit with a screw-threaded cap over one with a snap-on closure. It was testified by an expert witness for Plax, who had twenty-five years' experience developing, manufacturing and marketing plastic squeeze bottles, that the seal afforded by a screw-threaded cap with its positive locking action is a perfect seal that can only be destroyed by the unscrewing of the cap; whereas a friction cap for a polyethylene squeeze bottle cannot be made tight enough to stand commercial

use. This witness testified that a polyethylene dispenser with a screw-threaded cap could sustain the weight of an automobile without disturbing the seal while a friction cap could be dislodged by exerting quick pressure with the fingers to the dispenser bottle. The testimony that the friction cap disclosed by the Filger patent could be dislodged by applying sudden pressure with the fingers of the hand to the container was demonstrated in court using the Exhibit 6 dispenser and was strong corroborative evidence of the testimony that a dispenser with a snap-on cap such as disclosed by the Filger patent was not adaptable for commercial use. Another expert witness for Plax with experience in merchandising plastic spray bottles also gave similar testimony that dispensers with friction type caps are unfit for commercial usage.

While Plax relies on other alleged differences between Exhibit 8 and the disclosure of the patent to defeat the Filger claim of substantial identity, the evidence established that this material difference between the type of caps is of primary significance. The insistence of Filger that the difference in caps is but a minor detail of the complete dispenser unit is not persuasive. Obviously the closure for a dispenser of liquids that is manufactured to be packaged, shipped and sold in commercial channels and is of a size adaptable for being carried on the person of a consumer is an extremely important and essential element of the complete unit.

The contract between the parties provides for royalty payment to be made for any complete dispenser units substantially identical with that disclosed by the Filger patent. Since the test is substantial identity, consideration of the meaning of substantial identity as used in the contract is required. While this action is on a simple contract, it was prepared by patent attorneys and refers to the disclosure of a patent. In patent law it is well settled that "one thing is substantially the same as another if it performs substantially the same function in substantially the same way to obtain the same result." Machine Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; Thabet Mfg. Co. v. Kool Vent Metal Awning Corp., 6 Cir., 226 F.2d 207. The evidence in this case establishes that the results obtained from a complete dispenser unit with a screw-threaded cap as exemplified by Exhibit 8 are vastly superior to the complete dispenser unit disclosed by the Filger patent with the friction type cap and compels the conclusion that the disclosure of the Filger patent is not substantially identical to Exhibit 8.

It should also be mentioned that the evidence presented on the reopening of this case tends to support Plax's position that it was the intention of the parties to the contract that royalty be paid only on complete dispenser units identical or substantially identical to Exhibit 6. The negotiations leading up to the execution of the contract were in regard to Exhibit 6 and the expected order of the contract had been placed by Winthrop-Stearns, Inc., with Plax for the Exhibit 6 dispenser before the contract was fully executed. However, a ruling on this phase of this action is not required, since it has been determined that Filger has failed to sustain the burden of showing Exhibit 8 to be substantially identical to the disclosure of the Filger patent.

Findings of fact, conclusions of law and judgment in accordance with this memorandum are this day entered.