GONZÁLEZ CHEMICAL INDUSTRIES, INC., Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. 107. Decided September 21, 1962.

68

*Sifre, Ruiz Suria & Sifre* and *Baltazar Corrada del Río* for appellant. *Hiram R. Cancio, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Luis F. Candal,* attorneys of the Department of Justice, for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

Texaco Development Corporation, a corporation organized under the laws of Delaware, has a license for the manufacture of ammonia and methanol employing a synthesis gas generation process for the production of carbon monoxide and hydrogen. On August 2, 1955 a license agreement was executed between the aforesaid corporation and appellant, González Chemical Industries, Incorporated, a local corporation by virtue of which the latter was granted a license of a *nonexclusive* and *nontransferable* nature for the use of the aforesaid process, for which the latter bound itself to construct, within the term of two years, a plant, for synthesis gas generation in the Municipality of Guánica. Provisions were made for the immediate payment of a royalty of ten thousand dollars and other subsequent payments which depended in the plant's production. This sum of ten thousand dollars would be credited against subsequent royalty payments when production began.

On May 27, 1957 the Secretary of the Treasury notified appellant of the imposition of a tax on personal property for the fiscal year 1956–57, and included in the property assessed for tax purposes the license obtained by virtue of the license agreement with Texaco Development Corporation, which was appraised for that purpose at ten thousand dollars. It is an accepted fact that on this date González Chemical Industries, Incorporated had not yet constructed the plant for the synthesis gas generation and hence, the license obtained had not been used.

Suit was brought to contest the action of the Secretary in including the license right as taxable property. The trial court dismissed the complaint, and in order to review the judgment rendered we granted writ of review. The only question raised in this appeal may be summarized as follows:

Is a nonexclusive and nontransferable license to use a patented process in the production of a chemical product taxable for property tax purposes in Puerto Rico?

Section 290 of the Political Code, as amended, 13 L.P.R.A. § 443 is the source of property tax assessment in Puerto Rico. "All *property* not expressly exempt from taxation shall be assessed as taxable," is a general principle underlying the aforesaid fiscal faculty. It adds that "Personal property shall include . . . bonds, stocks, credit certificates in unincorporated syndicates or partnerships, *patent-rights*,[1] trade-marks, franchises, concessions, *and all other matters and things capable of private ownership. . . .*" Patent-rights have not been expressly exempt from taxation for the imposition of a property tax.[2] This being so, the decision of the question raised depends on a final analysis of whether the license granted to appellant constitutes "property" or a thing "capable of private ownership."[3]

What is the true nature of a license to use a patent? In general terms, a patent is an exclusive right or privilege (monopoly) created under the protection of the law which "has the attributes of personal property" (35 U.S.C. § 261), *Hartley Pen Co.* v. *Lindy Pen Co.*, 16 F.R.D. 141 (Cal. 1954), *cf.* 237 F.2d 294 (C.A. 9, 1956). Three ways for the cession or transfer of a patent are recognized: 1—the assignment, sale or transfer of the complete patent; 2—the assignment, sale or transfer of part of the patent, and 3—the

---

[1] In the Spanish text of *Buscaglia, Treas.* v. *Tax Court*, 70 P.R.R. 210 (1949), it is stated at footnote 3 that a more exact translation of the term "patent-rights" used in the English text would be *"derechos de patente"* instead of *"derechos de privilegio."*

[2] Section 291 of the Political Code as amended, 13 L.P.R.A. § 551, contains the general exemptions granted by law. As the exemptions granted by special laws, see, §§ 191 to 196, 241(b) and 552 to 607 of Title 13 of the Laws of Puerto Rico Annotated.

[3] Undoubtedly, the license has its value, *U. S. Industries, Inc.* v. *Otis Engineering Corporation*, 277 F.2d 282, 291 (1960), but that fact in itself does not mean that it constitutes *property* for the purposes of property taxation.

assignment, sale or transfer to make, sell, or use the product or process patented within a specified area of the United States. Any assignment or transfer which is not comprised in any one of the three situations pointed out constitutes a mere license. *Dairy Queen of Okla., Inc.* v. *C.I.R.*, 250 F.2d 503 (C.A. 10, 1957); *Watson* v. *United States*, 222 F.2d 689 (C.A. 10, 1955); *Broderick* v. *Neale*, 201 F.2d 621 (C.A. 10, 1953); *Starke* v. *Manufacturers Nat. Bank of Detroit*, 174 F. Supp. 882 (Mich. 1959); *De Luxe Game Corp.* v. *Wonder Products Co.*, 166 F. Supp. 56 (N.Y. 1958); *Kenyon* v. *Automatic Instruments Co.*, 160 F.2d 878 (C.A. 7, 1947); *United States* v. *Krasnov*, 143 F. Supp. 184 (Pa. 1956), *cf.* 355 U.S. 5 (1957). The license has been considered as a waiver of the right to sue by the patentee for the usurpation of the privilege protected by same. *De Forest Radio Telephone and Telegraph Co.* v. *United States*, 273 U.S. 236, 242 (1927); *Henry* v. *A. B. Dick Co.*, 224 U.S. 1 (1912); *American Telephone & Telegraph Co.* v. *Radio Audion Co.*, 281 Fed. 200 (Del. 1922); *Elgin National Watch Co.* v. *Bulova Watch Co.*, 118 N.Y.S.2d 197 (1953), or as an assignment by the patentee of his right to exclude the licensee from making, using, or selling the product or process patented, *United States* v. *Line Material Co.*, 333 U.S. 287 (1948), and finally, as a protection for the purchaser of the license against a complaint from the owner for usurpation of the privilege protected by the patent, *Western Electric Co.* v. *Pacent Reproducer Corp.*, 42 F.2d 116 (C.C.A. 2, 1930), *cert. denied*, 282 U.S. 873 (1930); *Filges* v. *Plax Corp.*, 156 F. Supp. 210 (Ky. 1957). It seems evident that in the case of a mere *nonexclusive* and *nontransferable* license, and in view of the foregoing, the attributes of property remain with the owner of the patent, and that the license is but a mere objective manifestation of the enjoyment of that property right. *Cf. De la Haba* v. *Tax Court; Treas., Int.*, 76 P.R.R. 865, 877 (1954).

 Two main theories underlie the imposition of property taxes: that of divisibility, which recognizes a property as a bundle or group of rights over a thing and whoever possesses one of those rights is considered as owner for tax purposes; and that of individuality or indivisibility, which does not consider as owner anyone who does not have all the rights over that thing. KEESLING, *Conflicting Conceptions of Ownership in Taxation*, 44 Cal. L. Rev. 866 (1956) ; KEESLING, *Property Taxation of Leases and Other Limited Interests*, 47 Cal. L. Rev. 470 (1959) ; *Liquor License not Subject to Property Tax*, 1 Stan. L. Rev. 370 (1949). This last one —prevailing in the majority of the state jurisdictions—is the one which, as inferred from our limited interpretations on that particular, prevails in Puerto Rico. *Fajardo Sugar Co. v. Treasurer of P. R.*, 22 P.R.R. 290, 298 (1915), where we stated that "The mere fact that the Legislature indicates an intention to tax all property does not make every possible form or mutation[4] of property taxable, and some things or claims of value are frequently not considered as property until the Legislature declares them to be so." In *De la Haba v. Tax Court, supra*, we made reference to the fact that a lessee of real property for a term of 999 years has "all the practical attributes of ownership" which makes him an owner for the purposes of the imposition of land tax. It is evident that if we have upheld in the case of De la Haba that "ordinary lessees are not liable for the property tax,"[5] neither

---

[4] A reading of the English text of the opinion delivered by the late Mr. Justice ·Wolf,, reveals that the term "mutation of property" refers to the real property because of the destiny or object to which they are applicable, § 262 of the Civil Code, 1930 ed., 31 L.P.R.A. § 1042, and not to dismemberments of ownership.

[5] The trial court pointed out in its opinion and judgment that the leasehold is subject to taxation under the fiscal laws, and cites as authority the decision in *González v. Tax Court*, 73 P.R.R. 24 (1952). However, all that was ·decided therein is limited to the fact that for income tax purposes a lease contract may have value in order to determine the existence of a benefit .in the disposal of some shares. Likewise, we have upheld that a lease contract may have value in the market subject to a compensation in a condemnation proceeding. *People v. McCormick; Floor Cov. Co., Int.*, 78

can the license involved in this case be considered for tax purposes.[6] The lessee makes use of the thing excluding third parties and even the owner, which is up to a certain point an attribute of the property; the license under consideration is not even exclusive or transferable. See, Annotation, *Assignability of license's rights under patent licensing contract*, 66 A.L.R.2d 606 (1959).

 The reference which is made in § 290 of the Political Code, *supra*, to the fact that personal property includes "things capable of private ownership" does not have the scope which the Secretary pretends and, in our judgment, complies with the sole purpose of establishing the distinction between the property of public ownership and property of private ownership (§§ 256 and 257 of the Civil Code, 1930 ed., 31 L.P.R.A. §§ 1025 and 1026).

It is possible that the rapid industrial development of the island requires—for a more equitable distribution of the tax responsibility—that the theory of divisibility be adopted for property tax assessment. *Cf.* PETERSON, *Assessment of Leasehold Interest in Tax Exempt Realty in California*, 48 Cal. L. Rev. 806 (1960). However, this is a function which rests exclusively with the Legislative Assembly and transcends the spheres of judicial intervention, even by way of interpretation. The desirability of this norm must necessarily be considered in the light of multiple economic factors which we are not a liberty to evaluate.

Having reached the conclusion that the license right involved herein does not constitute "property" for the purposes of the imposition of property tax, the judgment rendered by the Superior Court, San Juan Part, on January 7, 1959 will be reversed and another rendered instead sustaining the complaint filed.

---

P.R.R. 895 (1956). *Cf. Galiñanes Hnos.* v. *Superior Court; Univ'l Furniture, Int.*, 77 P.R.R. 836 (1955).

[6] In *Wynne* v. *Aller*, 96 S.E.2d 422 (N.C. 1957), it was stated that the relationship existing between a licensor and a licensee is comparable to that existing between a landlord and a tenant.